DOUGLAS HAN (SBN 232858)
dhan@justicelawcorp.com
SHUNT TATAVOS-GHARAJEH (SBN 272164)
statavos@justicelawcorp.com
DANIEL J. PARK (SBN 274973)
dpark@justicelawcorp.com
**JUSTICE LAW CORPORATION**
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
Telephone: (818) 230-7502
Facsimile: (818) 230-7259

*Attorneys for* Plaintiff Harry Noriesta

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY NORIESTA, on behalf of himself and all others similarly situated,<br><br>                   Plaintiff,<br>        v.<br><br>KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., a New York corporation; and DOES 1 through 100, inclusive;<br><br>                   Defendants. | Case No.: 5:19-CV-00620-JGB-KK<br><br>Honorable Jesus G. Bernal<br>Courtroom 1<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      May 6, 2020<br>Time:      9:00 a.m.<br><br>Complaint Filed: April 5, 2019<br>Trial Date:      None Set |

**TO THE HONORABLE COURT, AND TO DEFENDANT:**

PLEASE TAKE NOTICE that, on May 6, 2020 at 9:00 a.m., in Courtroom 1, located at George E. Brown Jr. Federal Building and United States Courthouse, 3470 Twelfth Street Riverside, California 92501-3802, the Honorable Jesus G. Bernal presiding, Plaintiff Harry Noriesta ("Plaintiff") on behalf of himself and all others similarly situated, will, and hereby does, move this Court to:

(1) Preliminarily approve the settlement described in the Joint Stipulation of Class Action Settlement Agreement and Release of Claims, attached as Exhibit 1 to the Declaration of Douglas Han;

(2) Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

(3) Appoint Plaintiff Harry Noriesta as Class Representative;

(4) Appoint Justice Law Corporation as Class Counsel;

(5) Appoint JND Legal Administrator as Settlement Administrator; and

(6) Set a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

/ / /

/ / /

/ / /

This Motion is based upon: (1) this Notice of Motion and Motion for Preliminary Approval; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Douglas Han; (4) the Joint Stipulation of Class Action Settlement Agreement and Release of Claims; (5) the Notice of Class Action Settlement; (5) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (6) the records, pleadings, and papers filed in this action; and (7) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

DATED:  March 30, 2020                    **JUSTICE LAW CORPORATION**


By: /s/ Douglas Han
      Douglas Han
      *Attorneys for* Plaintiff,
      HARRY NORIESTA

# TABLE OF CONTENTS

I.  INTRODUCTION ...............................................................................................1

II.  FACTS AND PROCEDURE...............................................................................2

    A.  Overview of the Litigation.......................................................................2

        1.  Plaintiff's Job Application and Background Check Form ........2

        2.  Motion to Transfer...................................................................4

        3.  Motion to Dimiss.....................................................................4

    B.  Plaintiff's Investigation and Discovery ....................................................5

    C.  The Parties Engaged in Mediation and Arm's-Length Settlement and Negotiations ...........................................................................................6

    D.  Material Terms of the Proposed Class Action Settlement...................6

        1.  The Proposed Settlement Classes.............................................6

        2.  The Settlement Benefits ...........................................................7

        3.  A Narrow Release.....................................................................7

        4.  A Consumer-Friendly Settlement Fund Distribution Process...8

        5.  No Reversion to Defendant ......................................................8

        6.  The Proposed Notice to the Settlement Class............................8

        7.  Proposed Attorney's Fees, Litigation Expenses, and Incentive Payment ...................................................................................9

III.  ARGUMENT ....................................................................................................10

    A.  The Court Should Grant Preliminary Approval of the Class Settlement ...............................................................................................10

        1.  The Standard for Preliminary Approval Has Been Met ..........10

        2.  The Settlement is Reasonable in Light of the Strengths and Weaknesses of Plaintiff's Case ..............................................12

        3.  The Risk, Expense, and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement.....16

        4.  The Amount Offered in Settlement Supports Approval..........17

5. The Settlement Was Finalized After a Thorough Investigation .................................................................19

6. The Views of Experienced Counsel Should be Accorded Substantial Weight .......................................................20

B. Conditional Class Certification is Appropriate for Settlement Purposes ...........................................................21

1. The Proposed Class Meets the Requirement of Rule 23 .........21

2. The Proposed Class is Sufficiently Numerous ........................21

3. There are Questions of Law and Fact that are Common to the Class .....................................................................21

4. Plaintiff's Claims are Typical of the Proposed Settlement Class .......................................................................22

5. Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class.............................23

6. Common Issues Predominate Over Individual Issues .............23

7. Class Settlement is Superior to Other Available Means of Resolution...............................................................24

8. The Requested Attorney Fee is Reasonable ...........................25

9. The Requested Class Representative Incentive Payment is Reasonable................................................................26

10. The Proposed Payment to the Settlement Administrator is Reasonable................................................................27

11. The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement......27

IV. CONCLUSION............................................................28

# **TABLE OF AUTHORITIES**

## **Cases**

*Aceves v. AutoZone, Inc.,*
 Case No. 5:14-CV-02032 (C.D. Cal. Nov. 18, 2016) .................................. 18

*Acosta v. Trans Union,*
 243 F.R.D. 377 (C.D. Cal. 2007) ................................................................ 11

*Anchem Prods. V. Windsor,*
 521 U.S. 591 (1997)................................................................................21, 24

*Armstrong v. Board of School Directors,*
 616 F. 2d 305 (7th Cir. 1980)...................................................................... 11

*Armstrong v. Davis,*
 275 F. 3d 859 (9th Cir. 2001)...................................................................... 22

*Bateman v. Multi-Cinema,*
 623 F. 3d 708 (9th Cir. 2010)...................................................................... 15

*Bassett C. ABM Parking Services, Inc.,*
 883 F. 3d 776 (9th Cir. 2018)...................................................................... 16

*Bedolla v. Allen,*
 736 Fed. Appx. 614 (CA. 9 (Cal.) 2018) .................................................... 26

*Boyd v. Bechtel Corp.,*
 485 F. Supp. 610 (N.D. Cal. 1979) ............................................................. 19

*Churchill Village v. Gen. Elec.,*
 361 F. 3d 566 (9th Cir. 2004).........................................................12, 20, 28

*Eisen v. Porsche Cars North American, Inc.,*
 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006
 (C.D. Cal. Jan. 30, 2014)........................................................................19, 20

*Feistco v. Petco Animal Supplies, Inc.,*
 Case No. 3:16-cv-01369-H-DHB (S.D. Cal. 2018) ..................................... 18

/ / /

*Frank v. Eastman Kodak Co.,*

    288 F.R.D. 174 (W.D.N.Y. 2005)................................................................19

*Franklin v. Kaypro,*

    884 F. 2d 1222 (9th Cir. 1989).................................................................10

*Gribble v. Cool Transps., Inc.,*

    2008 U.S. Dist. LEXIS 115560 (N.D. Cal. 2008)......................................11

*Guippone v. BH S&B Holdings LLC,*

    2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) .........................26

*Hanlon v. Chrysler Corp.,*

    150 F. 3d 1011 (9th Cir. 1998)...............................................10, 21, 22, 23, 24

*Harris v. Home Depot U.S.A., Inc.,*

    114 F. Supp. 3d 868 (N.D. Cal. 2015) ........................................................14

*Lane v. Facebook, Inc.,*

    2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) .........................16

*In re LDK Solar Secs. Litig.,*

    2010 U.S. Dist. LEXIS 87168 (N.D Cal. 2010)..........................................18

*Linney v. Cellular Alaska P'ship,*

    151 F. 3d 1234 (9th Cir. 1998)..............................................................18, 19

*London v. Wal-Mart Stores, Inc.,*

    340 F. 3d 1246 (11th Cir. 2003).................................................................15

*Long v. Tommy Hilfiger U.S.A.,*

    671 F. 3d 371 (3d. Cir. 2012).....................................................................13

*Lozano v. AT&T Wireless Services, Inc.,*

    504 F. 3d 718 (9th Cir. 2007).....................................................................22

*In re M.L. Stern Overtime Litig.,*

    2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) ...........................11

*Marisol v. Giuliani,*

    126 F. 3d 372 (2nd Cir. 1997)....................................................................22

---

*Miller v. CEVA Logistics USA Inc.,*

    2015 WL 729638 (N.D. Cal. 2015) ...................................................... 17

*Mullane v. Central Hanover Bank & Trust Co.,*

    339 U.S. 306 (1950) ........................................................................... 27

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.,*

    221 F.R.D. 523 (C.D. Cal. 2004) .................................................. 12, 8

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.,*

    926 F. 3d 528 (9th Cir. 2019) ........................................................... 14

*Nesbit v. Postmates, Inc.,*

    San Francisco Superior Court Case No. CGC-150547146

    (Nov. 8, 2017) ................................................................................... 18

*In re Netflix Privacy Litig.,*

    2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ............... 11

*Officers for Justice v. Civil Serv. Comm'n,*

    688 F. 2d 615 (9th Cir. 1982) ........................................................... 12

*Parra v. Bashas, Inc.,*

    536 F. 3d 975 (9th Cir. 2008) ........................................................... 22

*In re Pac. Enters. Sec. Litig.,*

    47 F. 3d 373 (9th Cir. 1995) ............................................................. 20

*In re Portal Software Inc. Sec. Litig.,*

    2007 U.S. Dist. LEXIS 99996 (N.D. Cal. Nov. 26, 2007) ............... 17

*Ramirez v. Trans Union, LLC,*

    301 F.R.D. 408 (N.D. Cal. 2014) ..................................................... 22

*Robins v. Spokeo, Inc.,*

    867 F. 3d 1108 (9th Cir. 2017) ......................................................... 14

*Rodriguez v. Hayes,*

    591 F. 3d 1105 (9th Cir. 2010) ......................................................... 22

/ / /

---

*Rodriguez v. West Pub. Corp.,*

    563 F. 3d 948 (9th Cir. 2009)..............................................................12, 16, 17

*Rohm v. Thumbtack, Inc.,*

    2017 WL 4642409 (N.D. Cal. 2017) ...............................................17, 18, 25

*Safeco Ins. Co. of Am. v. Burr,*

    551 U.S. 47 (2007) .........................................................................................13

*Satchell v. Fed. Express Corp.,*

    2007 U.S. Dist. LEXIS 99066 (N.D. Cal. 2007).........................................11

*Serna v. Big Drug Stores, Inc.,*

    2007 U.S. Dist. LEXIS 82023 (C.D. Cal. Oct. 9, 2007) ............................15

*Shlahtichman v. 1-800 Contacts, Inc.,*

    615 F. 3d (7th Cir. 2010) ...............................................................................13

*Soman v. Alameda Health Sys.,*

    2018 WL 6308185 (N.D. Cal. Dec. 3, 2018) ...............................................14

*Stanton v. Boeing Company,*

    327 F. 3d 938 (9th Cir. 2003).........................................................................11

*Stovall-Gusman v. W.W. Granger, Inc.,*

    2015 U.S. Dist. LEXIS 78671 (N.D. Cal. 2015).........................................18

*Syed v. M-I LLC,*

    852 F. 3d 492 (9th Cir. Mar. 20, 2017) ........................................................13

*Torres v. Pet Extreme,*

    2015 U.S. Dist. LEXIS 5136 (E.D. Cal. Jan. 15. 2015)..............................15

*Torrisi v. Tucson Elec.,*

    8 F. 3d 1370 (9th Cir. 1993)..........................................................................12

*In re Toys "R" Us-Decl., Inc., FACTA Litig.,*

    295 F.R.D. 438 (C.D. Cal. 2014) ...................................................15, 16, 18

*In re Uber FCRA Litigation,*

    2017 WL 2806698 (N.D. Cal. 2017) ...............................................17, 18, 25

*Vasquez v. Coast Valley Roofing, Inc.,*

    266 F.R.D. 482 (E.D. Cal. 2010) ....................................................16, 21, 25

*Vizcaino v. Microsoft Corp.,*

    290 F. 3d 1043 (9th Cir. 2002)............................................................25

*Wal-Mart Stores, Inc. v. Dukes,*

    131 S. Ct. 2541 (2011) ........................................................................21

*Willes v. State Farm Fire  Cas. Co.,*

    512 F. 3d 565 (9th Cir. 2008)............................................................13

*Wolin v. Jaguar Land Rover N. Am.,*

    617 F. 3d 1168 (9th Cir. 2010)..........................................................24

**Stautes**

15 U.S.C. § 1681b. ...........................................................................3, 4, 13

15 U.S.C. § 1681n ...........................................................................1, 13, 15

28 U.S.C. § 140(a) ...................................................................................4

California Civil Code §§ 1785, *et seq.* ...................................................1

California Civil Code §§ 1786, *et seq.* ...................................................1

Rule 23 ...........................................................................................*passim*

**Other Authorities**

Coffey, "FTC Informal Staff Opinion Letter" (Feb. 11, 1998)............................3

FTC, "40 Years of Experience with the Fair Credit Reporting Act" (July 2011)....4

Leathers, "FTC Informal Staff Opinion Letter" (Sept. 9, 1998) ........................3

*Manual for Complex Litigation* (4th Ed. 2004)...........................................10, 11, 21

*Newberg on Class Actions* (4th Ed. 2008) ...............................................26

## MEMORANDUM AND POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Harry Noriesta ("Plaintiff") moves the Court to preliminarily approve the Joint Stipulation of Class Action Settlement Agreement and Release of Claims ("Agreement") with Defendant Konica Minolta Business Solutions U.S.A., Inc. ("Defendant") that confers substantial relief to all Settlement Class Members. The Agreement submitted for the Court's approval resolves Plaintiff's claims that Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq., and related California state laws including, the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785 *et seq*., and the California Investigative Consumer Reporting Agencies Act, Cal. Civ. Code §§ 1786 *et seq*. Plaintiff alleges that before conducting a background check on applicants Defendant failed to provide applicants with a stand-alone document that consists *solely* of the background check disclosure, as required under the law; and ancillary state law rights.

The settlement provides substantial relief in the form of a $636,570 non-reversionary settlement fund for approximately 7,073 class members. Class members will not have to make claims. Instead, if they do not opt out a check will be mailed directly to them. The settlement of $636,570 is an excellent result for the class. In an FCRA case, a prevailing plaintiff will receive statutory damages of between $100 and $1,000, if the plaintiff can establish the violation was willful. 15 U.S.C. § 1681n(a)(1)(A). The gross settlement payment here of $90.00 to each of the 7,073 Class Members compares favorably to recent FCRA settlements.

/ / /

/ / /

/ / /

With a full understanding of the strengths and weaknesses of his case, Plaintiff engaged in arms'-length negotiations with Defendant, finally reaching an agreement following private mediation. (Declaration of Douglas Han at ¶ 9 ("Han Dec.") The underlying legal claims under the FCRA involve substantial risk because of the uncertain and evolving legal landscape regarding such claims.

In light of the risks of continuing with this litigation, Plaintiff submits that this proposed settlement, which guarantees that all Settlement Class Members will be paid, is fair, reasonable, and adequate. Accordingly, the parties respectfully request that the Court enter an order: (a) granting preliminary approval of the Settlement; (b) certifying the proposed Settlement Class; (c) appointing Plaintiff as the Class Representative; (d) appointing Justice Law Corporation as Class Counsel; (e) approving the parties' proposed form and method of giving Settlement Class Members notice of the action and the proposed Settlement; (f) directing that notice be given to Settlement Class Members in the proposed form and manner; and (g) setting a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

## II.    FACTS AND PROCEDURE

### A.    Overview of the Litigation

#### 1.    Plaintiff's Job Application and Background Check Form

Plaintiff alleges that Defendant's disclosure form ("Background Check Form") does not comply with the FCRA for the following reason: The Background Check Form Defendant used during the class period is not a stand-alone disclosure. Plaintiff alleges that the Background Check Form, used from at least April 5, 2012 to July 1, 2018 was integrated and embedded within a web-based employment application. (Han Decl. ¶ 2.)   By combining California mandated disclosures in its FCRA form, Plaintiff contends that Defendant violated the FCRA, ICRAA and CCRAA.

/ / /

It is Plaintiff's position that integrating the disclosure in the employment application violates Section 1681b(b)(2)(A) of the FCRA because the disclosures are not clear and unambiguous disclosures in stand-alone documents. Under the FCRA, it is unlawful to procure or cause to be procured, a consumer report or investigative consumer report for employment purposes, unless a "clear and conspicuous" disclosure is made in a document that consists "solely of the disclosure" and the consumer has authorized in writing the procurement of the report. 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

Although the disclosure and the authorization may be combined in a single document, the FTC has warned that the form should not include any extraneous information. For example, a 1998 opinion letter from the FTC states: "Section 604(b)(2)(A) of the FCRA [15 U.S.C. § 1681b(b)(2)(A) requires that the consumer disclosure be] . . . in a document that consists solely of the disclosure." Coffey, FTC Informal Staff Opinion Letter, Feb. 11, 1998, available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-coffey-02-11-98 (last accessed March 30, 2020.)

In response to an inquiry as to whether the disclosure may be prominently set forth within an application for employment or whether it must truly be included in a separate document, the FTC responded in another 1998 opinion letter that, "[t]he disclosure may not be part of an employment application because the language [of 15 U.S.C. § 1681b(b)(2)(A)] is intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure." Leathers, FTC Informal Staff Opinion Letter, Sept. 9, 1998, available at https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98 (last accessed March 30, 2020.)

/ / /

Further, in a report dated July 2011, the FTC reiterated that "the notice [under 15 U.S.C. § 1681b(b)(2)(A)] may not include extraneous or contradictory information." FTC, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations: July 2011, available at https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-creditreporting-act-ftc-staff-report-summary    interpretations/110720fcrareport.pdf (last accessed March 30, 2020.)

Thus, Plaintiffs contend that, by integrating the disclosure in its employment application, Defendant willfully disregarded the FTC's regulatory guidance and violated § 1681b(b)(2)(A) of the FCRA.

### 2. Motion to Transfer

Defendant filed a motion to transfer venue under 28 U.S.C. § 140(a) on May 21, 2019. (ECF No. 14.) Defendant requested that the matter be transferred from this Court to the United States District Court for the District of New Jersey arguing that litigating this action in the United States District Court for the District of New Jersey is more convenient for the parties and the witnesses and furthers the interest of justice. After considering Plaintiff's opposition and Defendant's reply brief, the Court denied Defendant's motion.

### 3. Motion to Dismiss

Defendant filed a motion to dismiss on May 20, 2019. (ECF No. 13.) The motion to dismiss argued that: (1) Plaintiff's first through fourth claims for relief are barred by the applicable statutes of limitations under the FCRA, the ICRAA, and the CCRAA; (2) Plaintiff does not have standing for injunctive relief; and (3) Plaintiff's fourth claim for injunctive relief under California's Unfair Competition Law ("UCL") is preempted by the FCRA.  In particular, Defendant argued that Plaintiff's claims were time-barred by the two-year statute of limitations under the FCRA, ICRAA, and CCRAA, as he had authorized his background check in September 2015.  After considering Plaintiff's opposition and Defendant's reply,

the Court granted in part and denied in part Defendant's motion. The court dismissed all claims for injunctive relief accordingly and indicated that the statute of limitations issue would be addressed in discovery.  If not for this settlement, the Parties would have continued to vigorously litigate these issues as the case progressed.   Accordingly, Plaintiff removed the injunctive relief claims in his amended complaint.

## A.    Plaintiff's Investigation and Discovery

Prior to the filing of this action, Plaintiff thoroughly investigated his claims. Plaintiff also conducted an investigation and discovery after filing the action in order to prove up his claims and rebut Defendant's defenses. Plaintiff alleges that Defendant routinely procures credit and background reports about current and former employees, including Plaintiff, and uses the information from these reports in connection with its hiring process without providing the legally required stand-alone disclosures. As part of the investigation, Plaintiff's counsel reviewed relevant documents and information relating to Defendant's background screening practices, Plaintiff's background check disclosure form, and the relevant background check disclosure forms used during the Class Period.  Defendant also produced information relating to the number of individuals on whom it obtained consumer reports during the Class Period for persons in the United States and California residents. (Han Decl.¶ 5.) Because this case turns on Defendant's legal defense that Defendant's noncompliance was not "willful" under the FCRA, Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions, as well as law governing related statutes such as FACTA. All of this review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the allegedly improper forms. (Han Decl. ¶ 6.)

/ / /

/ / /

**B. The Parties Engaged in Mediation and Arm's-Length Settlement Negotiations**

The proposed Settlement is the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue. The Parties attended a mediation on January 20, 2020 with mediator Jeff Ross, a well-regarded class action mediator. Under the auspices of the mediator, the parties reached settlement after a full day of negotiations. (Han Decl. ¶ 7.)

**C. Material Terms of the Proposed Class Action Settlement**

**1. The Proposed Settlement Classes**

Settlement Class Members consist of three classes:

<u>FRCA Class</u>: All United States unique job applicants on whom Defendant procured a consumer report for employment purposes based upon the same disclosure form provided to Plaintiff. Class membership begins on April 5, 2014 and continues through July 1, 2018. Defendant estimates that the FCRA Class has 5,748 members. (Agreement, § 1.6.1.)

<u>ICRAA Class</u>: All unique job applicants on whom Defendant procured a consumer report for employment purposes based upon the same disclosure form provided to Plaintiff and who provided a California address as their address of residence. Class membership begins on April 5, 2014 and continues through July 1, 2018. Defendant estimates that the ICRAA Class has 682 members. (Agreement, § 1.6.2.)

<u>CCRAA Class</u>: All unique job applicants on whom Defendant procured a consumer report for employment purposes containing consumer credit information based upon the same disclosure form provided to Plaintiff and who provided a California address as their address of residence. Class membership begins on April 5, 2012 and continues through July 1, 2018. Defendant estimates that the CCRAA class has 643 members. (Agreement, § 1.6.3.)

/ / /

## 2. The Settlement Benefits

Under the Settlement, all Settlement Class Members who do not submit a valid and timely Request for Exclusion will receive a settlement cash payment. Each Class Member will be eligible to receive an equal *pro rata* portion of the Net Settlement Amount for each Class in which each Class Member qualifies for membership. Given that all Class Members would have, in theory, suffered the same alleged "injury" if Plaintiff prevailed on a class-wide basis, but some may have different recourses under the ICRAA and CCRAA claims, the Net Settlement Amount shall be divided equally among all Class Members within each Class, with the Class Members eligible to recover a *pro rata* share for each Class in which they are a member. (Agreement, § 5.5.1.)

## 3. A Narrow Release

In exchange for the benefits and for other good and valuable consideration, Settlement Class Members who have not timely and properly opted out of the settlement will release Defendant for:

> "all claims, damages, losses, demands, penalties, liabilities, fees, interest, causes of action, complaints or suits that were or could have been brought in the Action relating to background checks including but not limited to claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, the Investigative Consumer Reporting Agencies Act, Cal. Civ. Code § 1786 *et seq.*, the Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785 *et seq.*, California Business & Professions Code §§ 17200 *et seq.*, and similar claims under state law which any Class Member has ever had, or hereafter may claim to have against the Released Parties as of the Effective Date. As to all other FCRA claims, past or present, the class members also waive and release their rights to be a class representative in a class action, or to seek punitive damages from KMBS, as of the Effective Date of the settlement."

(Agreement, § 1.33.)

/ / /

/ / /

The release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint. In addition, Plaintiff will execute a general release of claims releasing any known or unknown claims he may have had against Defendant in consideration of his receipt of the incentive award payment contemplated by the Agreement.

### 4. A Consumer-Friendly Settlement Fund Distribution Process

The parties have negotiated a mailing procedure to minimize the burden to Settlement Class Members. No class members will need to make claim in order to receive a payment. Within 21 calendar days of the Effective Date, Defendant will deposit the Gross Settlement Amount into an escrow account established by the third-party Settlement Administrator for the purposes of administering the settlement. (Agreement § 5.8.) No later than 30 days after the Effective Date, the Settlement Administrator will issue the checks constituting the Individual Settlement Payments. (Agreement § 5.7.) All payments to the Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail.

### 5. No Reversion to Defendant

No money will revert back Defendant. Any residue from uncashed settlement checks will go to a *cy pres* recipient, to be mutually agreed by the parties and approved by the Court at final approval.

### 6. The Proposed Notice to the Settlement Class

Within 30 calendar days of preliminary approval of the Settlement by the Court, Defendant shall provide to the Settlement Administrator a Class List with class information including (1) the name of each Class Member; and (2) the most current known address of each Class Member, as reflected in Defendant's records at the time of entry of the Court's Preliminary Approval Order. (Agreement § 3.2) Within 21 calendar days of receiving the Class List from Defendant, the Settlement Administrator shall send the Notice of Class Action Settlement, and Request for

Exclusion (attached as Exhibit A and B to Agreement) to Class Members via First Class U.S. Mail, using the most current known address of each Class Member, as reflected in Defendant's records at the time of entry of the Court's Preliminary Approval Order. (Agreement § 3.4.) Upon receipt of this information from Defendant, the Settlement Administrator shall perform a search based on the National Change of Address Database maintained by the United States Postal Service to update and correct any known or identifiable address changes.

In the event that a Class Notice is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator will re-send the Class Notice to the forwarding address affixed thereto. If no forwarding address is provided, then the Settlement Administrator will promptly conduct a "standard search," sometimes called, "Skip Traces" or "Credit Header" searches, to locate a better address. If an alternate address is found, the Settlement Administrator will promptly re-send the Class Notice. If the standard search does not provide an alternate address or the Class Notice is returned a second time without a forwarding address, the Settlement Administrator shall perform a manual "in-depth search" to locate a better address. If another address is found, the Settlement Administrator will promptly re-send the Class Notice.

Class Members shall have sixty (60) calendar days to opt-out of the Settlement. (Agreement § 4.2.)

### 7. Proposed Attorney's Fees, Litigation Expenses, and Incentive Payment

The Agreement provides that Class Counsel may apply for attorneys' fees not to exceed to 33% of the Gross Settlement Amount. Plaintiff here will seek an order from the Court awarding Class Counsel their reasonable attorneys' fees of $210,068.10 (33% of the Gross Settlement Amount) and reasonable out-of-pocket costs incurred in this action in the amount up to $15,000. (Agreement § 5.2.) The parties intend to request an Incentive Payment in the amount of $10,000 to Plaintiff

in exchange for the general release of claims annexed as Exhibit C. (Agreement § 5.3.)

## III. ARGUMENT

### A. The Court Should Grant Preliminary Approval of the Class Settlement

#### 1. The Standard for Preliminary Approval Has Been Met

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude themselves from this settlement; and (3) a final hearing on the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

In reviewing class action settlements, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). This reflects the longstanding policy in favor of encouraging settlement of class action suits as "[l]itigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial … The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

/ / /

/ / /

/ / /

In the preliminary approval stage, the Court first determines whether a class exists. *Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003). Then, the Court evaluates "whether the settlement is within the range of possible approval, such that there 'is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *In re M.L. Stern Overtime Litig.*, No. 07-0118-BTM, 2009 U.S. Dist. LEXIS 31650, at *10 (S.D. Cal. Apr. 13, 2009) (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 9 (7th Cir. 1980)); *see also, Acosta v. Trans Union*, 243 F.R. D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.") emphasis in original). In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, granting preliminary approval unless the settlement terms are so unacceptable that a formal fairness hearing would be a waste of time. *See* Manual for Complex Litigation §21.632.

At the outset, the fairness and reasonableness of a settlement agreement is presumed "where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS 37286, at *11 (N.D. Cal. Mar. 18, 2013). This settlement is the product of arms'-length negotiations conducted, with both sides agreeing to the final terms after mediating with mediator Jeff Ross, a distinguished mediator respected by California courts. "The assistance of an experienced mediator in the settlement process confirms that the settlement was non-collusive." *Satchell v. Fed. Express Corp.*, 2007 U.S. District LEXIS 99066, at *17 (N.D. Cal. 2007). Thus, this non-collusive Settlement is entitled to a "presumption of fairness." *Gribble v. Cool Transps., Inc.*, 2008 U.S. Dist. LEXIS 115560, at *26 (N.D. Cal. 2008).

In addition, the Court may consider some or all of the following factors in evaluating the reasonableness of a settlement: the extent of discovery completed and the stage of proceedings; the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; and the experience and views of counsel. *See Churchill Village v. Gen. Elec.*, 361 F. 3d 566, 575 (9th Cir. 2004). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (citing *Torrisi v. Tuscon Elec.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

## 2. The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004). In assessing the strength of the plaintiff's case and the probability for success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) internal quotation omitted). There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, Plaintiff alleges that Defendant used a disclosure form that included both the disclosure and extraneous information in the same document. Plaintiff contends that this document was part of Defendant's employment application, and therefore violates the FCRA, which provides, in relevant part:

/ / /.

/ / /

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) *a clear and conspicuous disclosure has been made in writing* to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure,* that a consumer report may be obtained for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the analysis does not end there. Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a). *In Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. *See, e.g., Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts); *Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371 (3dCir. 2012) (holding that a defendant was not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

The Ninth Circuit's decision in *Syed* held that: "in light of the clear statutory language that the disclosure document must consist solely of the disclosure, a prospective employer's violation of the FCRA is willful when the employer includes terms in addition to the disclosure." *Syed v. M-I LLC*, 852 F.3d 492, 496 (9th Cir. March 20, 2017.)

Here, Defendant argues that Plaintiff's claims fall outside the two-year statute of limitations period based on the discovery rule because Plaintiff had knowledge that Defendant conducted the background check on him using the disclosure form at issue shortly after Plaintiff submitted his application on September 14, 2015. *See Harris v. Home Depot U.S.A.*, Inc., 114 F. Supp. 3d 868, 869-870 (N.D. Cal. 2015) (The two-year limitations period begins to run not when an applicant signed an allegedly defective disclosure form, but when the employer procured the report). Defendant additionally argues that the disclosure portion of the employment application appeared on a separate page such that any employee completing the application would be presented with the disclosure by itself, and therefore, it was stand-alone. Also, Defendant argues that language in its disclosure form is not extraneous and does not violate the FCRA, or at least that any violation should not be deemed willful. *See, e.g. Soman v. Alameda Health Sys.*, No. 17-cv-06076-JD, 2018 WL 6308185, at *3 (N.D. Cal. Dec. 3, 2018) ("The three state-law boxes are not of a sort that would make the notice in the FCRA disclosure less than clear and conspicuous in any meaningful way or violate the intent of being 'solely' disclosures."). Defendant additionally argues that Plaintiff lacks Article III standing to bring these claims, which it contends is a hyper-technical alleged violation of the FCRA, without alleging an actual injury in fact or concrete harm. *See Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) (a bare procedural violation is insufficient to establish standing); *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) (holding class must be decertified and dismissed when class representative is found to lack standing as to individual claims).

/ / /

/ / /

/ / /

Defendant's motion to dismiss alleged a variety of Defendant's defenses, *supra*. The availability of these defenses to Defendant, coupled with Plaintiff's burden to show that Defendant engaged in "reckless disregard of statutory duty," make it challenging for Plaintiff to prove ultimate liability. *See In re Toys 'R' Us-Decl., Inc*. FACTA Litig., 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness" under FCRA is a triable issue); s*ee also Torres v. Pet Extreme*, No. 13-011778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue [under 15 U.S.C. §1681n]… [this] weighs in favor of settlement).

As some courts have categorically rejected the theory of liability advanced here, Plaintiff faces substantial risk of a complete loss in this case. Plaintiff also faces the prospect that the Court could rule that Plaintiff's claims are time-barred, that Plaintiff lacks standing, or even if a violation is established, that it was not willful.

Some courts have refused to grant class certification for cases seeking statutory penalties on the grounds that liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." *Serna v. Big A Drug Stores, Inc*., No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart Stores, Inc*., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)). While the Ninth Circuit clarified that such matters are properly considered at the merits stage, the court also observed that the direct court may have the power to reduce the amount in penalties as "constitutionally excessive" even if the plaintiff were to prevail. *See Bateman v. Multi-Cinema, Inc.* 623 F.3d 708, 723 (9th Cir. 2010).

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

/ / /

**3. The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement**

While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both parties would mount, and Plaintiff would face "substantial risk of incurring the expense of a trial without any recovery," given that Defendant would argue that class members incurred no actual damages. *Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 451.

Furthermore, only recently was there substantial litigation on the FCRA, and the litigants face a greater chance of changes in case law or statutory enactments that will eliminate liability. *See Bassett v. ABM Parking Services, Inc.*, 883 F.3d 776, 778 (9th Cir. 2018) (describing an FCRA amendment in 2008 that insulated merchants from liability in printed expiration date on a receipt). Plaintiff thus faces additional "risk that an opinion could issue changing the legal landscape in this relatively new area of statutory law," which favors settlement. *Id*. And even if Plaintiff were to succeed in certifying the class, the "risk that a class action may be decertified at any time generally weighs in favor of settlement." *Lane v. Facebook Inc.*, No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)).

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations omitted). Here, the Settlement delivers immediate recovery for all Settlement Class Members and avoids the risks and expenses for protracted litigation, including potential interlocutory appeals and an appeal after a trial. This factor supports approving the Settlement. *See In re Portal Software Inc. Sec. Litig.*, No, C-03-5138 VRW, 2007 U.S. Dist. LEXIS 99996, *3

(N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks proceeding to… trial and appeal also support the settlement).

### 4.    The Amount Offered in Settlement Supports Approval

Defendant will pay $636,570 to settle this case. The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA Inc.*, 2015 WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). The class members have relatively small amounts of money at stake. There are no measurable economic damages, only potential statutory damages. The FCRA's damages provision limits recovery to statutory damages (if willful) between $100 and $1,000 or actual damages, whichever is greater. With approximately 7,073 class members, the FCRA statutory damages i.e., the core claim in the Action, are between $707,300 to $7,073,000. It is reasonable to assume that a jury in this case would enter an award at the lower end of the potential $100 to $1,000 range, particularly where the alleged violation concerns the technical language in the disclosure form, rather than, for example, an inaccuracy in a consumer's background check resulting in the denial of employment. In Plaintiff's view, this is a favorable result.

The total settlement amount is $636,570 for a class approximately 7,073 class members. Class members do not need to make a claim but instead will be mailed a check directly. The settlement is also non-revisionary. By contrast, *Rohm v. Thumbtack, Inc.*, 2017 WL 4642409 (N.D. Cal. 2017) (granting approval) involved a claims made settlement (albeit a non-revisionary one) where 66,676 class members shared in a $225,000 settlement. Similarly, *In re Uber FCRA Litigation*, 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval) involved a claims made settlement (also non-revisionary) where 1,025,954 class

members shared in a $7.5 million settlement. Therefore, this case has a gross recovery of $90.00 per class member compared to $3.37 per class member for the *Thumbtack* case and $7.31 per class member for the *Uber* case. These numbers compare favorably with other recent settlements as well. *See, e.g., Nesbit v. Postmates, Inc.*, San Francisco Superior Court Case No. CGC-150547146 (final approval; granted on November 8, 2017; 186,988 class members shared in a $2,500,000 settlement fund, meaning the gross settlement amount per class member was $13.30 per class member); *Aceves v. AutoZone Inc.*, Case No. 5:14-CV-02032, ECF No. 58 (C.D. Cal. Nov. 18, 2016) (granting final approval where 206,650 class members shared in a $5,700,000 settlement--$27.58 gross and approximately $20 net per class member); *Feist v. Petco Animal Supplies, Inc.,* Case No. 3:16-cv-01369-H-DHB ECF No. 48 (S.D. Cal. 2018) (granting final approval; 37,279 class members shared in a $1,200,000 settlement--$32 gross and approximately $20 net per class member).

The settlement percentage here is also well above the amount of many non-FCRA settlements granted final approval by courts within the Ninth Circuit. *See, e.g., Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. 2015) (7.3% of the "estimated trial award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (3%); *In re LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages"). Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes"). Importantly, the reasonableness of a settlement is not dependent upon the amount approaching the potential recovery plaintiffs might receive if successful at trial. *See Nat'l. Rural Tele. Coop.*, 221 F.R.D. at 527. Indeed, compromise is the very nature of

settlement. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979). Moreover, courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a proposed settlement, a range which recognizes the uncertainties of law and fact and attendant risks and costs associated with taking any litigation to completion. *See Frank v. Eastman Kodak Co.*, 288 F.R.D. 174, 186 (W.D.N.Y. 2005).

### 5.    The Settlement Was Finalized After a Thorough Investigation

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney*, 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on.").

Plaintiff engaged in extensive investigation and discovery, including reviewing documents. (*See* Han Decl. ¶¶ 3-5.) Based on this discovery and on their independent investigation and evaluation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation of this type, as well as the various defenses asserted by Defendant.

/ / /

/ / /

/ / /

**6.** **The Views of the Experienced Counsel Should be Accorded Substantial Weight**

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the parties achieved a settlement after a thorough review of relevant documents and information, as well as an analysis of the parties' claims and defenses. The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations and finalized with the assistance of an experienced mediator after a full day of negotiation.

Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters. (*See* Han Decl. ¶¶ 15-16.) Likewise, Defendant's counsel, Seyfarth Shaw LLP, is a nationally recognized law firm. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel and the involvement of a mediator in approving a settlement resolving automotive defect allegations).

Based on the satisfaction of the *Churchill* factors, the Court should find the proposed Settlement to be fair and adequate.

/ / /

/ / /

/ / /

### B. Conditional Class Certification Is Appropriate for Settlement Purposes

#### 1.  The Proposed Class Meets the Requirements of Rule 23

Before granting preliminary approval of the settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. An analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate.

#### 2.  The Proposed Class Is Sufficiently Numerous

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members). Here, the proposed Settlement Classes consists of the three classes as discussed, *supra*.

Defendant estimates 7,073 Settlement Class Members fall within the class definition, satisfying the numerosity requirement.

#### 3.  There are Questions of Law and Fact that Are Common to the Class

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The operative criterion for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The commonality requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019- 1020. Where "the circumstances of each particular class member vary but retain a common core

of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas,' Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

Here, each Class Member executed a Background Check Form disclosing the employer's intent to obtain a credit report or background check on a current or prospective employee. One single common question resolves the dispute: whether Defendant willfully violated the law by using the Background Check Form. Accordingly, the Court should find commonality for purposes of settlement. *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 417-418 (N.D. Cal. 2014) (finding commonality on a contested certification motion where one common question resolves the issue of whether a defendant violated the FCRA by failing to include certain mandated information in the disclosure form).

### 4. Plaintiff's Claims are Typical of the Proposed Settlement Class

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020)). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

/ / /
/ / /
/ / /

1    Here, Plaintiff asserts that Settlement Class Members' claims arising from

2    Defendant's alleged unlawful use of the disclosure form is reasonably co-extensive

3    with the legal claims asserted by Plaintiff. Each Settlement Class Member's claims

4    arise from the same underlying conduct— namely, Defendant's alleged failure to

5    use a disclosure form free of extraneous language, in contravention of the FCRA.

6    Plaintiff's claims are thus typical of the Class for the purposes of settlement.

### 5.    Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

9    Adequacy is satisfied, because "the representative parties will fairly and

10   adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). Adequacy

11   will be found if (1) the proposed representative plaintiff does not have conflicts of

12   interest with the proposed class, and (2) the plaintiff is represented by qualified and

13   competent counsel. *Hanlon*, 150 F.3d at 1020. Here, Plaintiff is adequate since he

14   has no conflict of interest with the proposed Class. In addition, Plaintiff is

15   represented by competent counsel with deep experience in litigating class actions,

16   and who do not have a conflict of interest with the class. (*See* Han Decl. ¶ 19.)

17   Thus, Plaintiff satisfies the adequacy prong for purposes of settlement.

### 6.    Common Issues Predominate Over Individual Issues

19   "In addition to meeting the conditions imposed by Rule 23(a), the parties

20   seeking class certification must also show that the action is maintainable under

21   Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed

22   Class is maintainable under Rule 23(b)(3), as common questions predominate over

23   any question affecting only individual members, and class resolution is superior to

24   other available methods for a fair resolution of the controversy. *Id*. (citing Fed. R.

25   Civ. P. 23(b)(3)).

26   / / /

27   / / /

28   / / /

1    Here, for purposes of settlement, the predominance test is satisfied, as the

2    proposed Settlement makes relief available for all Settlement Class Members based

3    solely on easily ascertainable criteria, bypassing whatever individual evidentiary

4    and factual issues that could arise in litigation in determining liability or damages.

5    Consequently, common questions predominate over individual issues for purposes

6    of settlement.

7        **7.    Class Settlement Is Superior to Other Available Means of**

8             **Resolution**

9        Similarly, there can be little doubt that resolving all Settlement Class

10   Members' claims through a single class action is superior to a series of individual

11   lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in

12   individual members controlling the prosecution of separate actions. There would

13   be less litigation or settlement leverage, significantly reduced resources and no

14   greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the

15   Settlement negotiated on behalf of the Class demonstrate the advantages of a

16   collective bargaining and resolution process.

17       Furthermore, manageability at trial is not a concern in the class action

18   settlement context, "for the proposal is that there be no trial." *Amchem Products,*

19   *Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Additionally, although the benefits of

20   the Settlement negotiated on behalf of the Class are significant, the amount of

21   penalties made available for willful FCRA violations, ranging from $100 to

22   $1,000, is not nearly enough to incentivize individual class members into action.

23   *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010)

24   ("Where recovery on an individual basis would be dwarfed by the cost of litigating

25   on an individual basis, this [superiority] factor weighs in favor of class

26   certification."); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class

27   action mechanism is to overcome the problem that small recoveries do not provide

28   the incentive for any individual to bring a solo action prosecuting his or her rights.

A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."). Here, the efforts and funds required to marshal the type of evidence, including potentially expert testimony, to establish liability against well-financed corporate defendant would also discourage Settlement Class Members from pursuing litigation.

The superiority of proceeding through the class action mechanism is demonstrable in this case. Through the class action device, Plaintiff's counsel was able to negotiate a global Settlement with Defendant that, if approved, will provide Settlement Class Members with immediate monetary relief. As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are satisfied, certification of the proposed Settlement Class is appropriate.

### 8.    The Requested Attorney Fee is Reasonable

The Agreement provides for up to 33 percent of the Gross Settlement Amount in attorneys' fees, and for reimbursement of reasonable litigation costs. (Agreement § 5.2.)  These provisions are fair, adequate and reasonable, and fall well-within the range of reasonable fees articulated in the relevant Ninth Circuit case law. It is well settled that "the primary basis of the fee award remains the percentage method," (*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002),) and 33 percent is within the established reasonable range for common-fund cases. *See, e.g., Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value").

/ / /

/ / /

/ / /

The work done in this case by Class Counsel includes drafting pleadings, propounding written discovery, reviewing documents produced by Defendant, working up and drafting a mediation brief, working with an expert to analyze the data produced by Defendant, opposing Defendant's motion to dismiss, opposing Defendant's motion to transfer venue, and drafting a motion for preliminary approval. (Han Decl. ¶ 17.)

Attorney fees of 33 percent of the Gross Settlement Amount ($210,068.10) is reasonable given the amount of work and quality of work performed by Class Counsel and the fact that Class Counsel received an excellent award for the class. This case has a gross recovery of $90.00 per class member, which compares very favorably to $3.3 per class member for the *Thumbtack* case and $7.31 per class member for the *Uber* case. These numbers compare favorably with other recent settlements as well. *See e.g. Bedolla v. Allen*, 736 Fed.Appx. 614, 616 (C.A.9 (Cal.), 2018).

### 9. The Requested Class Representative Incentive Payment is Reasonable

It is common in class action cases to provide enhancement awards to named plaintiffs. *See Newberg* § 11:38 (4th ed. 2008). Here, Plaintiff requests an incentive payment of $10,000. This award is reasonable as Plaintiff has expended significant time and energy litigating his case. Plaintiff has been a diligent class representative working to provide his attorneys with information. (Han Decl. ¶ 20.) In this case, the requested incentive payment is justified in light of the reputational risk Plaintiff assumed in bringing an employment class action against his employer. *See Guippone v. BH S&B Holdings LLC,* No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members.").

/ / /

## 10. The Proposed Payment to the Settlement Administrator is Reasonable

The parties have selected JND Legal Administrator as the Settlement Administrator. (Han Decl. ¶ 21.) JND Legal Administrator has extensive experience in administering Class Action Settlements. The Agreement states that the Settlement Administrator shall be reimbursed from the Gross Settlement Amount for the reasonably incurred fees and expenses in administering the settlement. (Agreement § 3.1) JND Legal Administrator estimates that the administration cost for this case will not exceed $35,000. In class counsel's experience these estimated costs are reasonable and necessary to effectuate the settlement.

## 11. The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement

Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice given "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

/ / /

/ / /

/ / /

The parties have agreed on a notice plan that satisfies the requirements of Rule 23. Under this plan, Defendant will pay a Settlement Administrator to mail the Class Notice and Request for Exclusion Forms to all Class Members as identified in Defendant's Class List. The Class Notice will summarize the terms of the settlement and inform the Class Members of their options. The Class Notices includes all the content required by Rule 23(c)(2)(B), such as a description of the action and Class claims, as well as the Class Members' right to opt out of, object to, or comment on the proposed Settlement, including any application for attorneys' fees, costs, and service awards. *See Churchill Village*, 361 F.3d at 576 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation omitted).

The Class Notice is easily understandable. The Class Notice includes contact information for class counsel and instructions on how to obtain additional information from the Court or by reviewing documents posted on the case website.

## IV. **CONCLUSION**

The parties have negotiated a fair and reasonable settlement. Accordingly, Plaintiff moves the Court to preliminarily approve the settlement; direct the dissemination of notice to the class as proposed; and set a hearing date and briefing schedule for final Settlement approval and Plaintiff's fee and expense application.

DATED:  March 30, 2020                **JUSTICE LAW CORPORATION**


By: /s/ Douglas Han
        Douglas Han
        *Attorneys for* Plaintiff,
        HARRY NORIESTA