DOUGLAS HAN (SBN 232858)
dhan@justicelawcorp.com
SHUNT TATAVOS-GHARAJEH (SBN 272164)
statavos@justicelawcorp.com
DANIEL J. PARK (SBN 274973)
dpark@justicelawcorp.com
**JUSTICE LAW CORPORATION**
751 N. Fair Oaks Ave., Ste. 101
Pasadena, California 91103
Telephone: (818) 230-7502
Facsimile: (818) 230-7259

*Attorneys for* Plaintiff Harry Noriesta

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY NORIESTA, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., a New York corporation; and DOES 1 through 100, inclusive;<br><br>                Defendants. | Case No.: 5:19-CV-00620-JGB-KK<br><br>[Honorable Jesus G. Bernal]<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; FOR AN AWARD OF ATTORNEY FEES AND EXPENSES, SETTLEMENT ADMINISTRATOR PAYMENT AND CLASS REPRESENTATIVE INCENTIVE PAYMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          October 19, 2020<br>Time:          9:00 a.m.<br>Courtroom:   1<br><br>Complaint Filed: April 5, 2019<br>Trial Date:       None Set |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE on October 19, 2020 at 9:00 a.m., in Courtroom 1, located at George E. Brown Jr. Federal Building and United States Courthouse, 3470 Twelfth Street Riverside, California 92501-3802, the Honorable Jesus G. Bernal presiding, Plaintiff Harry Noriesta ("Plaintiff"), on behalf of himself and all others similarly situated, will, and hereby does, move this Court to:

(1) Finally approve the Joint Stipulation of Class Action Settlement Agreement and Release of Claims ("Agreement");

(2) Finally approve certification of the Settlement Class;

(3) Award attorney fees in the amount of $210,068.10 (33% of the Settlement Amount);

(4) Award litigation expenses in the amount of $10,974.14;

(5) Award Settlement Administrator expenses in the amount of $35,000;

(6) Award Plaintiff Harry Noriesta a Class Representative Incentive Payment in the amount of $10,000.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Douglas Han; (4) the Agreement; (5) the Notice of Class Action Settlement, and Request for Exclusion; (6) the [Proposed] Order (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

DATED:  September 21, 2020          **JUSTICE LAW CORPORATION**


By: ~~/s/~~ Douglas Han
Douglas Han
*Attorneys for* Plaintiff

# TABLE OF CONTENTS

I.   INTRODUCTION .............................................................................. 1

II.  BACKGROUND ................................................................................ 3

    A.   Summary of Relevant Law .................................................... 3

        1.   The Fair Credit Reporting Act ("FCRA") ................................ 3

        2.   The Ninth Circuit's Landmark *Syed* Decision ........................ 3

        3.   The Investigative Consumer Reporting Agencies Act ............. 5

    B.   Overview of the Litigation .................................................... 5

    C.   The Disclosure Forms at Issue ............................................. 6

    D.   Motion to Dismiss ................................................................ 6

    E.   Plaintiff's Investigation and Discovery ................................ 7

    F.   The Parties Engaged in Mediation and Arm's-Length Settlement Negotiations ................................................................... 8

    H.   Material Terms of the Proposed Class Action Settlement ................. 8

        1.   The Settlement Classes ............................................................ 8

        2.   The Settlement Benefits ........................................................... 9

        3.   A Narrow Release ................................................................... 9

        4.   A Consumer-Friendly Claims Process ................................... 10

        5.   Notice to the Class and Class Response ................................. 10

        6.   No Reversion to Defendant .................................................... 11

III. ARGUMENT ................................................................................... 11

    A.   The Court Should Grant Final Approval of the Class Settlement ..... 11

        1.   The Standard for Final Approval Has Been Met .................... 11

        2.   The Settlement is Reasonable in Light of the Strengths and Weaknesses of Plaintiff's Case ............................................... 13

        3.   The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement .... 16

        4.   The Amount Offered in Settlement Supports Approval ......... 18

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

5. The Settlement Was Finalized After a Thorough Investigation .......................................................... 20

6. The Views of Experienced Counsel Should be Accorded Substantial Weight ................................................ 21

7. The Presence or Absence of a Governmental Participant ...... 22

8. The Reaction of the Class is Overwhelmingly Positive ......... 22

B. Class Certification is Appropriate for Settlement Purposes ............. 22

C. The Court Should Award the Requested Attorneys Fees, Expenses, Settlement Administrator Expenses and Class Representative Service Award .......................................................................................... 22

1. The Requested Fee Award is Reasonable .............................. 22

   a) Applicable Law Regarding Attorneys' Fees ................ 24

   b) Class Counsel Provided High Quality Representation that Supports the Requested Fee Award .............................. 25

   c) The Settlement Provides Benefit to the Class and Supports the Requested Fee Award ............................................ 26

   d) The Complexity of the Issues Supports the Fee Award ........................................................................ 26

   e) The Risk of Nonpayment Supports the Requested Fee Award ........................................................................ 27

   f) The Contingent Nature of the Settlement Supports the Fee Award ........................................................................ 27

   g) The Reaction of the Class Supports the Fee Award ..... 28

   h) A Lodestar Analysis Also Supports the Requested Fee ........................................................................ 28

2. Plaintiff's Litigation Expenses Should be Reimbursed .......... 30

3. The Settlement Administrator's Expenses Should be Approved ............................................................................ 30

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

4. The Court Should Approve a Class Representative Incentive
Payment ...................................................................................... 30

IV. CONCLUSION ...................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

*Aceves v. AutoZone, Inc.,*
  Case No. 5:14-CV-02032 (C.D. Cal. Nov. 18, 2016) ................................. 19

*In re Apple Inc. Secs. Litig.,*
  2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) ......................... 29

*Bassett v. ABM Parking Services, Inc.,*
  883 F. 3d 776 (9th Cir. 2018) ......................................................... 17

*Bateman v. Am. Multi-Cinema, Inc.,*
  623 F. 3d 708 (9th Cir. 2010) ........................................................ 16

*Beaver v. Tarsadia Hotels,*
  2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) .......................................... 27

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F. 3d 935 (9th Cir. 2011) ................................................... 24, 25

*Boyd v. Bank of Am. Corp.,*
  2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ......................................... 27

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979) .................................................. 19

*Churchill Village v. Gen. Elec.,*
   361 F. 3d 566 (9th Cir. 2004) ...................................................... 12

*City of Burlington v. Dague,*
  505 U.S. 557 (1992) ................................................................. 25

*Clayton v. Knight Transp.,*
  2013 WL 5877213 (E.D. Cal. Oct. 30, 2013) .......................................... 23

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.,*
  2014 WL 186375 (N.D. Cal. Jan. 16, 2014) ........................................... 29

*Cotter v. Lyft, Inc.,*
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) .............................................. 12

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Craft v. Cnty. of San Bernardino,*
    624 F. Supp. 2d 1123 (C.D. Cal. 2008)......................................................... 23

*Deaver v. Compass Bank,*
    2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ............................................. 27

*Eisen v. Porsche Cars North American, Inc.,*
    2014 U.S. Dist. LEXIS 14301 (C.D. Cal. Jan. 30, 2014)...................... 20, 21

*Feist v. Petco Animal 33 Supplies, Inc.,*
    Case No. 3:16-cv- 01369-H-DHB ECF No. 48 (S.D. Cal. 2018) ............... 19

*Frank v. Estman Kodak Co.,*
    288 F.R.D. 174 (W.D.N.Y. 2005) ................................................................ 20

*Franklin v. Kaypro,*
    884 F. 2d 1222 (9th Cir. 1989)..................................................................... 12

*Gilberg v. California Check Cashing Stores, LLC,*
    913 F. 3d 1169 (2019) ..................................................................................... 5

*Graham v. Daimler Chrysler Corp.,*
    34 Cal. 4th 553 (2004)................................................................................. 27

*Hanlon v. Chrysler Corp.,*
    150 F. 3d 1011 (9th Cir. 1998)..................................................................... 12

*In re Heritage Bond Litig.,*
    2005 WL 1594389 (C.D. Cal. Jun. 10, 2005) ............................................. 28

*Holloway v. Best Buy Co.,*
    No. C 05-5056 PJH (MEJ) (N.D. Cal. Mar. 31, 2008) ............................... 29

*In re HP Laser Printer Litig.,*
    2011 WL 3861703 (C.D. Cal. filed Aug. 31, 2011)..................................... 29

*Johnson v. General Mills, Inc.,*
    2013 WL 3213832 (C.D. Cal. 2013) ............................................................ 30

*Kearney v. American Honda Motor Am.,*
    2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013).......................... 29

*Lane v. Facebook,*

    2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) .......................... 17

*In re LDK Solar Secs. Litig.,*

    2010 U.S. Dist. LEXIS 87168 (N.D. Cal. 2010).......................................... 19

*Leland v. Lagos Stanford Junior University,*

    2017 WL 113302 (N.D. Cal. 2017) ............................................................ 18

*Linney v. Cellular Alaska P'ship,*

    151 F. 3d 1234 (9th Cir. 1998) ............................................................ 19, 20

*London v. Wal-Mart Stores, Inc.,*

    340 F. 3d 1246 (11th Cir. 2003) ................................................................ 16

*Long v. Tommy Hilfiger U.S.A.,*

    671 F. 3d 371 (3rd Cir. 2012) .................................................................... 14

*Mathein v. Pier 1 Imports (U.S.) Inc.,*

    2018 WL 1993727 (E.D. Cal. April 27, 2018)........................................... 22

*Miller v. CEVA Logistics USA Inc.,*

    2015 WL 729638 (N.D. Cal. 2015)............................................................ 18

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.,*

    221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 12, 13, 19

*Nesbitt v. Postmates, Inc.,*

    San Francisco Court Case No. CGC-15-547146........................................ 19

*Officers for Justice v. Civil Serv. Comm'n,*

    688 F. 2d 615 (9th Cir. 1982) .................................................................... 13

*In re Pac. Enters. Sec. Litig.,*

    47 F. 3d 373 (9th Cir. 1995)...................................................................... 21

*Paul, Johnson, Alston & Hunt v. Graulty,*

    886 F. 2d 268 (9th Cir. 1989)............................................................. 24, 35

*Pierce v. County of Orange,*

    905 F. Supp. 2d 1017 (C.D. Cal. 2012)..................................................... 29

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*In re Portal Software Inc. Sec. Litig.,*
    2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007) ......................... 17

*Rodriguez v. West Pub. Corp.,*
    563 F. 3d 948 (9th Cir. 2009) .......................................... 13, 17, 18

*Rohm v. Thumbtack, Inc.,*
    2017 WL 4642409 (N.D. Cal. 2017) ................................... 2, 18, 25

*Romero v. Producers Dairy Goods, Inc.,*
    2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ........................... 23

*Rutti v. Lojack Corp.,*
    2012 WL 3151077 (C.D. Cal. July 31, 2012) ........................... 29

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47 (2007) .................................................... 14

*Serna v. Big A Drug Stores, Inc.,*
    2007 U.S. Dist. LEXIS 82023 (C.D. Cal. Oct. 9, 2007) ............. 16

*Shlahtichman v. 1- 800 Contracts, Inc.,*
    615 F. 3d 794 (7th Cir. 2010) ....................................... 14

*Singer v. Becton Kickinson and Co.,*
    2010 WL 2196104 (S.D. Cal. June 1, 2010) ........................... 23

*Six Mexican Workers v, Arizona Citrus Growers,*
    904 F. 2d 1311 (9th Cir. 1990) ....................................... 23

*Soman v. Alameda Health Sys.,*
    2018 WL 6308185 (N.D. Cal. Dec. 3, 2018) ........................... 15

*Staton v. Boeing,*
    327 F. 3d 938 (9th Cir. 2003) ................................. 23, 24, 25

*Stovall-Gusman v. W.W. Granger, Inc.,*
    2015 U.S. Dist. LEXIS 78671 (N.D. Cal. 2015) ..................... 19

*Stuart v. RadioShack Corp.,*
    2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010) ........... 29

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Syed v. M-I, LLC,*
    853 F. 3d 492 (9th Cir. 2017) ............................................................ 3, 4, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ............................................ 29

*Torres v. Pet Extreme,*
    2015 U.S. Dist. LEXIS 5136 (E.D. Cal. Jan. 15, 2015) ............................ 15

*Torrisi v. Tucson Elec.,*
    8 F. 3d 1370 (9th Cir. 1993) .................................................................. 12

*In re Toys 'R' Us-Del., Inc. FACTA Litig.,*
    295 F.R.D. 438 (C.D. Cal. 2014) ................................................. 15, 16, 19

*Trs. Of the Constr. Indus and Laborers Health and Welfare Trust v. Redland Ins.
Co.,*
    460 F. 3d 1253 (9th Cir. 2006) .............................................................. 30

*In re Uber FCRA Litigation,*
    2017 WL 2806698 (N.D. Cal. 2017) ............................................. 2, 18, 25

*United States v. Menasche,*
    348 U.S. 528 (1955) .................................................................................. 4

*Van Vranken v. Atlantic Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) ......................................................... 23

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. 2010) ............................................................ 17

*Vizcaino v. Microsoft Corp.,*
    290 F. 3d 1048 (9th Cir. 2002) ................................................... 23, 24, 25

*Wang v. Chinese Daily News, Inc.,*
    2008 U.S. Dist. LEXIS 123824 (C.D. Cal. Oct. 3, 2008) .......................... 29

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
    19 F. 3d 1299 (9th Cir. 1994) ................................................................ 27

*Willes v. State Farm Fire & Cas. Co.,*

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

512 F. 3d 565 (9th Cir. 2008) .......................................................... 14

*Wilshire Westwood Assocs. v. Atlantic Richfield Corp.,*

    881 F. 2d 801 (9th Cir. 1989) ...................................................... 4

**Statutes**

15 U.S.C. § 1681 ....................................................................... *passim*

Civil Code § 1785 ............................................................................ 1, 9

Civil Code § 1786 ............................................................................ 1, 9

Business and Professions Code § 17200 ................................................. 9

Federal Rule of Civil Procedure 23 ...................................................... 11

ICRAA Civil Code § 1786 .................................................................... 5

ICRAA Civil Code § 1786.2 ................................................................. 5

ICRAA Civil Code § 1786.16 ............................................................... 5

**Other Authorities**

Manual for Complex Litigation (4th Ed. 2004) ..................................... 11

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The settlement provides substantial relief in the form of $636,570 on a non-reversionary basis for Defendant's failure to satisfy various State and Federal statutes pertaining to pre-employment background checks performed on the Settlement Class. No Class Members will have to make claims.  Instead, checks will be mailed directly to them.

Plaintiff's counsel, who vigorously prosecuted these claims, are experienced in this field and obtained a very favorable recovery on this case for the class, are seeking $210,068.10, in fees which represents 33% of the recovery; along with costs in the amount of $10,974.14.

This lawsuit asserts that Konica Minolta Business Solutions U.S.A., Inc. ("Konica Minolta"  or "Defendant")  violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*., and related California state laws including, the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785 *et seq*., and the California Investigative Consumer Reporting Agencies Act, Cal. Civ. Code §§ 1786 *et seq*. Plaintiff alleges that before conducting a background check on applicants Defendant failed to provide applicants with a stand-alone document that consists *solely* of the background check disclosure, as required under the law; and ancillary state law rights.

This Court granted preliminary approval to the settlement of this action on May 7, 2020. (ECF No. 43.) Notice has gone out to the class by First Class Mail. To date there are zero objections and only forty-five requests for exclusion.

In a FCRA case, a prevailing plaintiff will receive statutory damages of between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A.) The settlement amount of $636,570 is a good result for the class. In this settlement the average gross amount per class member is $61.83. This compares favorably to other recent FCRA settlements. For example, in two recent FCRA settlements (involving similar

allegations of defective FCRA disclosure forms) the gross settlement amount(s) per class member were $3.30 per class member in one case and $7.31 per class member in the other. *Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval); *In re Uber FCRA Litigation*, 2017 WL 2806698 (N.D. Cal. 2017)(granting preliminary approval).

The Settlement not only was negotiated with an experienced mediator, it was entered into with the parties fully cognizant of the risks of the case. Additional motion practice including an eventual renewed Motion to Dismiss and/or a Motion for Summary Judgment were some of the risks that Plaintiff took into account when settling this case.

The settlement is an excellent result. The underlying legal claims under the FCRA involve substantial risk because of the uncertain and evolving legal landscape regarding such claims. Class counsel has obtained a certain recovery for the class in face of great risk and uncertainty.

Any residue from uncashed checks will go to the *cy pres* recipient, the Legal Aid At Work ("LAAW").

Plaintiff requests that the Court approve an award of attorney fees in the amount of $210,068.10 which is 33% of the $636,570 Settlement Fund. Plaintiff also requests that the Court approve litigation expenses in the amount of $10,974.14. Plaintiff also requests that the Court approve the Settlement Administrator's expenses in the amount of $35,000, and a Class Representative Incentive Payment in the amount of $10,000. In light of the risks of continuing with this litigation, Plaintiff submits that this settlement, which guarantees that all Settlement Class Members will be paid, is fair, reasonable, and adequate and should be approved.

/ / /

/ / /

/ / /

## II.    BACKGROUND

### A.    Summary of Relevant Law

#### 1.    The Fair Credit Reporting Act ("FCRA")

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b), requires employers to use certain documents and to follow specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees.

Pursuant to section 1681b of the FCRA, no person can obtain a consumer report for employment purposes without providing a "clear and conspicuous disclosure . . .in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i.) The person obtaining the consumer report must also obtain the consumer's written authorization which can be done as part of the disclosure form. 15 U.S.C. § 1681b(b)(2)(A)(ii.) A plaintiff may be entitled to statutory and punitive damages when a defendant has willfully violated the provisions of the FCRA. 15 U.S.C. § 1681n(a)(1)(A): "any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . damages of not less than $100 and not more than $1000 . . . such amount of punitive damages as the court may allow."

#### 2.    The Ninth Circuit's Landmark *Syed* Decision

In 2017, the Ninth Circuit issued a major decision on the issue of violation of the stand-alone disclosure requirement of the FCRA. *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017.) In *Syed*, the FCRA disclosure contained a term purporting to waive any liability of the employer related to the background check. *Id*. at 498. The Ninth Circuit held that under the plain language of the FCRA that the required disclosure must be in "a document that consists solely of the disclosure," the inclusion of the liability release was impermissible: "We must begin with the text of the statute. Where congressional intent has been expressed in reasonably plain terms,

that language must ordinarily be regarded as conclusive . . . . The ordinary meaning of 'solely' is '[a]lone; singly' or entirely exclusively." *Syed* at 500. The Ninth Circuit also held that due to the clarity of the statutory language requiring that the disclosure be in a document consisting "solely" of the disclosure, "a prospective employer's violation of the FCRA is "willful" when the employer includes terms in addition to the disclosure." *Id*. at 496.

While *Syed* involved a liability release, its holding is broader. *Syed* broadly analyzed the "solely" requirement governing the disclosure apart from any release language:

> "It is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotation marks omitted). M-I's interpretation fails to give effect to the term "solely," violating the precept that "statutes should not be construed to make surplusage of any provision." *Wilshire Westwood Assocs. v. Atl. Richfield Corp.,* 881 F.2d 801, 804 (9th Cir. 1989) (alterations and internal quotation marks omitted). That other FCRA provisions mandating disclosure omit the term "solely" is further evidence that Congress intended that term to *carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i). See* 15 U.S.C. §§ 1681d, 1681s-3.

*Syed*, 853 F.3d at 501 (emphasis added).

Put in simplest terms, "solely" means just what it appears to mean and, in Plaintiff's view, no implied exceptions to the "solely" requirement should be judicially added to the one express exception allowing the authorization to accompany the correct disclosure. The FCRA expressly states that the sole additional element that may be included with the disclosure is an authorization, "which authorization may be made on the document referred to in clause (i). . . ." 15 U.S.C.A. § 1681b(b)(2)(A)(ii).

/ / /

/ / /

/ / /

On January 29, 2019, the United States Court of Appeals for the Ninth Circuit found that a background check document similar to the ones here did not comply with the standalone document requirement in FCRA and ICRAA and was not clear. *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (C.A.9 (Cal.), 2019). The form in *Gilberg* included references to state rights, like the forms here.

### 3. The Investigative Consumer Reporting Agencies Act

Plaintiff also asserts a cause of action under California's Investigative Consumer Reporting Agencies Act. (ICRAA California Civil Code § 1786 *et seq*.) Under the ICRAA, an "'investigative consumer report' means a report in which information on a consumer's character, general reputation, personal characteristics or mode of living is obtained through any means." California Civil Code § 1786.2(c.) When an employer obtains an investigative consumer report, the employer must provide "a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure." California Civil Code § 1786.16(2)(B.)

### B. Overview of the Litigation

On April 5, 2019, Plaintiff filed a class action lawsuit alleging violation of the FCRA, ICRAA, the Consumer Credit Reporting Agencies Act ("CCRAA") and the Business and Professions Code in the United State District Court for the Central District of California. The lawsuit alleges that the forms used by Konica Minolta to disclose pre-employment background checks do not comply with the requirements of the FCRA, ICRAA and CCRAA. Specifically, Plaintiff alleges that Konica Minolta violated the FCRA requirement that the disclosure form convey the employer's intent to obtain a credit report or background check on a current or prospective employee. Plaintiff further alleges that Konica Minolta violated the above statutes' requirement that the disclosure form be clear and

conspicuous and consist solely of the disclosure. As such, Plaintiff contends that Konica Minolta failed to provide applicants with a stand-alone document that consists solely of the disclosure, as required under the law. Plaintiff's position is that the disclosure forms include impermissible extraneous information, in direct contravention of the FCRA.

### C. The Disclosure Forms at Issue

Plaintiff alleges that Defendant's disclosure form ("Background Check Form") does not comply with the FCRA for the following reason: The Background Check Form Defendant used during the class period is not a stand-alone disclosure. Plaintiff alleges that the Background Check Form, used from at least April 5, 2012 to July 1, 2018 was integrated and embedded within a web-based employment application. By combining California mandated disclosures in its FCRA form, Plaintiff contends that Defendant violated the FCRA, ICRAA and CCRAA.

### D. Motion to Dismiss

Konica Minolta filed a motion to dismiss on May 20, 2019. (ECF No. 13.) The motion to dismiss argued that: (1) Plaintiff's first through fourth claims for relief are barred by the applicable statutes of limitations under the FCRA, the ICRAA, and the CCRAA; (2) Plaintiff does not have standing for injunctive relief; and (3) Plaintiff's fourth claim for injunctive relief under California's Unfair Competition Law ("UCL") is preempted by the FCRA. In particular, Defendant argued that Plaintiff's claims were time-barred by the two-year statute of limitations under the FCRA, ICRAA, and CCRAA, as he had authorized his background check in September 2015. After considering Plaintiff's opposition and Defendant's reply, the Court granted in part and denied in part Defendant's motion. The court dismissed all claims for injunctive relief accordingly and indicated that the statute of limitations issue would be addressed in discovery. If not for this settlement, the Parties would have continued to vigorously litigate these issues as the case progressed. Ultimately, Defendant would have filed a Motion for

Summary Judgment to litigate these issues prior to class certification or trial.

**E.    Plaintiff's Investigation and Discovery**

Prior to the filing of this action, Plaintiff thoroughly investigated his claims. Plaintiff also conducted an investigation and discovery after filing the action in order to prove up his claims and rebut Defendant's defenses. Plaintiff alleges that Defendant routinely procures credit and background reports about current and former employees, including Plaintiff, and uses the information from these reports in connection with its hiring process without providing the legally required stand-alone disclosures. As part of the investigation, Plaintiff's counsel reviewed relevant documents and information relating to Defendant's background screening practices, Plaintiff's background check disclosure form, and the relevant background check disclosure forms used during the Class Period.  Defendant also produced information relating to the number of individuals on whom it obtained consumer reports during the Class Period for persons in the United States and California residents. Declaration of Douglas Han ("Han Decl." ¶ 15.) Because this case turns on Defendant's legal defense that Defendant's noncompliance was not "willful" under the FCRA, Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions, as well as law governing related statutes such as FACTA. All of this review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the allegedly improper forms. (Han Decl. ¶ 15.)

/ / /

/ / /

/ / /

**F.    The Parties Engaged in Mediation and Arm's-Length Settlement Negotiations**

The proposed Settlement is the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue. The Parties attended a mediation on January 20, 2020 with mediator Jeff Ross, a well-regarded class action mediator. Under the auspices of the mediator, the parties reached settlement after a full day of negotiations. (Han Decl. ¶ 7.)

**H.    Material Terms of the Proposed Class Action Settlement**

**1.    The Settlement Classes**

Class Members consist of three classes:

FRCA Class: All United States unique job applicants on whom Defendant procured a consumer report for employment purposes based upon the same disclosure form provided to Plaintiff. Class membership begins on April 5, 2014 and continues through July 1, 2018. (Agreement, § 1.6.1.) The FCRA Class has 5,748 members. (Declaration of Jennifer M. Keough ("Keough Decl."), ¶ 5.)

ICRAA Class: All unique job applicants on whom Defendant procured a consumer report for employment purposes based upon the same disclosure form provided to Plaintiff and who provided a California address as their address of residence.  Class membership begins on April 5, 2014 and continues through July 1, 2018.  (Agreement, § 1.6.2.) The ICRAA Class has 682 members. (Declaration of Jennifer M. Keough (Keough Decl. ¶ 5.)

CCRAA Class: All unique job applicants on whom Defendant procured a consumer report for employment purposes containing consumer credit information based upon the same disclosure form provided to Plaintiff and who provided a California address as their address of residence.  Class membership begins on April 5, 2012 and continues through July 1, 2018.  (Agreement, § 1.6.3.) The CCRAA class has 643 members.  (Keough Decl. ¶ 5.)

/ / /

## 2. The Settlement Benefits

Under the Settlement, all Settlement Class Members who do not submit a valid and timely Request for Exclusion will receive a settlement cash payment. Each Class Member will be eligible to receive an equal *pro rata* portion of the Net Settlement Amount for each Class in which each Class Member qualifies for membership. Given that all Class Members would have, in theory, suffered the same alleged "injury" if Plaintiff prevailed on a class-wide basis, but some may have different recourses under the ICRAA and CCRAA claims, the Net Settlement Amount shall be divided equally among all Class Members within each Class, with the Class Members eligible to recover a *pro rata* share for each Class in which they are a member. (Agreement, § 5.5.1.)

The amount of any Individual Settlement Payments that remain undeliverable or uncashed one hundred and eighty (180) calendar days after the postmarked date of the initial mailing of the Individual Settlement Payments will be distributed to the Parties' mutually agreed upon *cy pres* recipient. (Agreement, § 5.5.1.) The Parties designated the Legal Aid At Work ("LAAW"), a 501c(3) non-profit organization as the *cy pres* recipient.

## 3. A Narrow Release

In exchange for the benefits and for other good and valuable consideration, Settlement Class Members who have not timely and properly opted out of the settlement will release Konica Minolta for:

> "all claims, damages, losses, demands, penalties, liabilities, fees, interest, causes of action, complaints or suits that were or could have been brought in the Action relating to background checks including but not limited to claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, the Investigative Consumer Reporting Agencies Act, Cal. Civ. Code § 1786 *et seq.*, the Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785 *et seq.*, California Business & Professions Code §§ 17200 *et seq.*, and similar claims under state law which any Class Member has ever had, or hereafter may claim to have against the Released Parties as of the Effective Date. As to

all other FCRA claims, past or present, the class members also waive and release their rights to be a class representative in a class action, or to seek punitive damages from KMBS, as of the Effective Date of the settlement."

(Agreement, § 1.33.)

This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint. In addition, Plaintiff Noriesta will execute a general release of claims, releasing any known or unknown claims he may have had against Konica Minolta.

### 4.    A Consumer- Friendly Claims Process

The parties have negotiated a mailing procedure to minimize the burden to Class Members. No class members will need to make claim in order to receive a payment. Within 21 calendar days of the Effective Date, Defendant will deposit the Gross Settlement Amount into an escrow account established by the third-party Settlement Administrator for the purposes of administering the settlement. (Agreement § 5.8.)  No later than 30 days after the Effective Date, the Settlement Administrator will issue the checks constituting the Individual Settlement Payments. (Agreement § 5.7.) All payments to the Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail.

### 5.    Notice to the Class and the Class Response

On June 25, 2020 the Settlement Administrator mailed notice to the Class Members. (Keough Decl. ¶ 7.) To date, forty-five Class Members have opted out of the litigation and there have been zero objections. (Keough Decl. ¶¶ 15-16.)

/ / /

/ / /

/ / /

### 6. No Reversion to Defendant

No money will revert to the Defendant. Any residue from uncashed settlement checks will go to a *cy pres* recipient, proposed to be the LAAW. The core of LAAW's work is providing fee legal services to low-wage workers with employment claims. LAAW litigates cases that address an array of issues important to low-wage workers, including (a) violations of wage-and-hour laws; (b) workplace retaliation; (c) discrimination on account of race, national origin, disability, sex, gender identity, sexual orientation, immigration status and language proficiency; (d) harassment; and (e) failure to comply with equal pay laws and family medical leave laws. Additionally, LAAW's Community Legal Services Program provides advice and counseling to low-wage workers on the full range of employment law issues they face through twelve statewide Workers' Rights Clinics. As such, the LAAW has a direct connection to Plaintiff's claims in this case.

## III. ARGUMENT

### A. The Court Should Grant Final Approval of the Class Settlement

### 1. The Standard for Final Approval Has Been Met

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude themselves from the settlement; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. See Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

/ / /

/ / /

In reviewing class action settlements, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998). This reflects the longstanding policy in favor of encouraging settlement of class action suits, as "[l]itigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . .The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro,* 884 F.2d 1222, 1225 (9th Cir. 1989).

In addition, the Court may consider some or all of the following factors in evaluating the reasonableness of a settlement:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in the settlement; (6) the experienced and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Cotter v. Lyft, Inc.,* 193 F.Supp.3d 1030, 1035 (N.D. Cal. 2016). See *Churchill Village v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004). "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (citing *Torrisi v. Tuscson Elec.,* 8 F.3d 1370, 1376 (9th Cir. 1993)).

/ / /

/ / /

/ / /

**2.** **The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case**

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). In assessing the strength of the plaintiff's case and the probability for success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted). There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Rodriguez v. West Pub. Corp.,* 563 F.3d 948, 965 (9th Cir. 2009).

Here, Plaintiff alleges that Konica Minolta used forms that included both the disclosure form and extraneous information in the same document. Plaintiff contends that Konica Minolta's use of this document in employment applications facially violates the FCRA, which provides:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

/ / /

/ / /

/ / /

However, the analysis does not end there. Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a). *In Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." See also *Willes v State Farm Fire & Cas. Co.*, 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. S*ee, e.g., Shlahtichman v 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681c(g) was inapplicable to email receipts); *Long v Tommy Hilfiger U.S.A.*, 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

The Ninth Circuit's decision in *Syed* held that: "in light of the clear statutory language that the disclosure document must consist solely of the disclosure, a prospective employer's violation of the FCRA is willful when the employer includes terms in addition to the disclosure." *Syed v. M-I LLC*, 852 F.3d 492, 496 (9th Cir. March 20, 2017.)

/ / /

/ / /

/ / /

Here, Defendant would argue that the state law disclosures are closely related enough to the purpose of the disclosure that they should be regarded as not violating the FCRA or at least that any violation should not be deemed willful. See, e.g., *Soman v. Alameda Health Sys.,* No. 17-cv-06076-JD, 2018 WL 6308185, at *3 (N.D. Cal. Dec. 3, 2018) ("The three state-law boxes are not of a sort that would make the notice in the FCRA disclosure less than clear and conspicuous in any meaningful way or violate the intent of being 'solely' disclosures.").

Konica Minolta's motion to dismiss alleged a variety of Defendant's defenses, arguing that: (1) Plaintiff's first through fourth claims for relief are barred by the applicable statutes of limitations under the FCRA, the ICRAA, and the CCRAA; (2) Plaintiff does not have standing for injunctive relief; and (3) Plaintiff's fourth claim for injunctive relief under California's Unfair Competition Law ("UCL") is preempted by the FCRA. While Defendant prevailed in part, Defendant would have continued to explore these defenses and would have filed a motion for summary judgment. If not for the settlement, Plaintiff would have vigorously engaged in these law and motion practice.

The availability of these defenses to Defendant, coupled with Plaintiff's burden to show that Defendant engaged in "reckless disregard of statutory duty," make it challenging for Plaintiff to prove ultimate liability. See *In re Toys 'R' Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness" under FCRA is a triable issue); see also *Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. Jan. 15, 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of willfulness[under 15 U.S.C. §1681n]…[this] weighs in favor of settlement").

/ / /

/ / /

/ / /

As some courts have categorically rejected the theory of liability advanced here, Plaintiff faces substantial risk of a complete loss in this case. Plaintiff also faces the prospect that the Court could rule that Plaintiff's claims are time-barred.

Some courts have refused to grant class certification for cases seeking statutory penalties on the grounds that liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." *Serna v. Big A Drug Stores, Inc.,* No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)). While the Ninth Circuit clarified that such matters are properly considered at the merits stage, the court also observed that the district court may have the power to reduce the amount in penalties as "constitutionally excessive" even if the plaintiff were to prevail. See *Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708, 723 (9th Cir. 2010).

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

### 3. The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement

While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both parties would mount, and Plaintiff would face "substantial risk of incurring the expense of a trial without any recovery," given that Konica Minolta would argue that class members incurred no actual damages. *Toys 'R' Us FACTA Litig.*, 295 F.R.D. at 451.

/ / /

/ / /

/ / /

Furthermore, only recently was there substantial litigation on the FCRA, and litigants face a greater chance of changes in case law or statutory enactments that will eliminate liability. See *Bassett v. ABM Parking Services, Inc.,* 883 F.3d 776, 778 (9th Cir. 2018) (describing an FCRA amendment in 2008 that insulated merchants from liability on printed expiration date on a receipt). Plaintiff thus faces additional "risk that an opinion could issue changing the legal landscape in this relatively new area of statutory law," which favors settlement. *Id*. And even if Plaintiff were to succeed in certifying the class, the "risk that a class action may be decertified at any time generally weighs in favor of settlement." *Lane v. Facebook, Inc.,* No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 966 (9th Cir. 2009)).

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations omitted). Here, the Settlement delivers immediate recovery for all Settlement Class Members and avoids the risks and expenses of protracted litigation, including potential interlocutory appeals and an appeal after a trial. This factor supports approving the Settlement. See *In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks of proceeding to… trial and appeal also support the settlement).

/ / /

/ / /

/ / /

### 4. The Amount Offered in Settlement Supports Approval

Defendant is paying a total settlement amount of $636,570. The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA Inc.,* 2015 WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). The class members have relatively small amounts of money at stake, as the FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages, whichever is greater. With 5,744 violations, the FCRA statutory damages i.e., the core claim in the Action, are between $574,400 to $5,744,000. A recent decision used the $100 per violation penalty as the comparator for determining the fairness of an FCRA settlement. *Leland v. Lagos Stanford Junior University*, 2017 WL 113302 *4 (N.D. Cal. 2017.) Here, the $636,570 non-reversionary settlement amount is approximately $90.00 per violation and is 90% of the amount that would be awarded if the jury awarded a $100 penalty per violation.

The total settlement amount is $636,570 for a class of 6,037 class members involving 7,069 potential violations. Class members do not need to make a claim but instead will be mailed a check directly. The settlement is also non-reversionary. By contrast, R*ohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval) involved a claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement. Similarly, *In re Uber FCRA Litigation*, 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval) involved a claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement. Therefore, this case has a gross recovery of $57.43 per class member compared to $3.3 per class member for the *Thumbtack* case and $7.31 per class member for the *Uber* case. These numbers compare favorably with other recent settlements as well. See, e.g., *Nesbitt*

*v. Postmates, Inc.,* San Francisco Superior Court Case No. CGC-15-547146 (final approval granted on November 8, 2017; 186,988 class members shared in a $2,500,000 settlement fund, meaning the gross settlement amount per class member was $13.30 per class member); *Aceves v. AutoZone Inc.,* Case No. 5:14-CV-02032, ECF No. 58 (C.D. Cal. Nov. 18, 2016) (granting final approval where 206,650 class members shared in a $5,700,000 settlement--$27.58 gross and approximately $20 net per class member); *Feist v. Petco Animal 33 Supplies, Inc.,* Case No. 3:16-cv-01369-H-DHB ECF No. 48 (S.D. Cal. 2018) (granting final approval; 37,279 class members shared in a $1,200,000 settlement--$32 gross and approximately $20 net per class member).

The settlement percentage here is also well above the amount of many non-FCRA settlements granted final approval by courts within the Ninth Circuit. See, e.g., *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. 2015) (7.3% of the "estimated trial award"); In *re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (3%); *In re LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168, *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages"). Of course, it should not be surprising that a settlement yields less than what the class could theoretically have recovered at trial. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes"). Importantly, the reasonableness of a settlement is not dependent upon the amount approaching the potential recovery plaintiffs might receive if successful at trial. *See Nat'l. Rural Tele. Coop.,* 221 F.R.D. at 527. Indeed, compromise is the very nature of settlement. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979). Moreover, courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a proposed settlement, a range which recognizes the uncertainties of law and fact and attendant risks and costs associated with taking any litigation to

completion. *See Frank v. Estman Kodak Co.,* 288 F.R.D. 174, 186 (W.D.N.Y. 2005).

**5.  The Settlement Was Finalized After a Thorough Investigation**

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. See *Linney,* 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. See *Eisen v. Porsche Cars North American, Inc.,* Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on.").

Plaintiff engaged in significant investigation and discovery, including reviewing documents and communication with other class members and obtaining their documents for analysis. (Han Decl. ¶ 15.) Based on this discovery and on their independent investigation and evaluation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate, and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation of this type, as well as the various defenses asserted.

/ / /

/ / /

/ / /

### 6. The Views of Experienced Counsel Should Be Accorded Substantial Weight

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the parties achieved a settlement after a thorough review of relevant documents and information, as well as an analysis of the parties' claims and defenses. The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations and finalized with the assistance of an experienced mediator who made a mediator's proposal.

Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters including experience in Fair Credit Reporting Act cases involving allegations that the defendant employer failed to provide a legally compliant stand-alone disclosure. (See Han Decl. ¶¶ 12-14; 17-18.)

Likewise, Konica Minolta's counsel, Seyfarth Shaw LLP, is a nationally recognized law firm. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche,* 2014 WL 439006, at *5 (crediting the experience and views of counsel and the involvement of a mediator in approving a settlement resolving automotive defect allegations).

/ / /

/ / /

/ / /

### 7. The Presence or Absence of a Governmental Participant

There is no governmental participant in this case. Therefore, this factor is neutral. E.g., *Mathein v. Pier 1 Imports (U.S.) Inc.,* 2018 WL 1993727 *8 (E.D. Cal. April 27, 2018): "Because there are no separate governmental participants involved in the action, this factor is neutral in the court's analysis of the settlement agreement."

### 8. The Reaction of the Class is Overwhelmingly Positive

As of the date of this filing, there are no objections to the settlement and only forty-five requests for exclusion. This means only .74 percent of the class members chose to request exclusion. Therefore, the reaction of the class is overwhelmingly positive. This factor supports approval.

### B. Class Certification Is Appropriate for Settlement Purposes

On May 7, 2020 the Court granted conditional certification of the settlement class. No intervening case law or events provide a basis for disturbing that conclusion.

### C. The Court Should Award The Requested Attorney Fees, Expenses, Settlement Administrator Expenses and Class Representative Service Award

### 1. The Requested Fee Award Is Reasonable

The Agreement provides that Class Counsel may apply for attorneys' fees not to exceed 33% of the Gross Settlement Amount. Thus, Plaintiff seeks a fee award of $210,068.10, which amounts to 33% of the $636,570 Gross Settlement Amount. This fee request is in line with the fee awards granted in these types of cases.

/ / /

/ / /

/ / /

In the Ninth Circuit, twenty-five percent (25%) of the Maximum Settlement Amount is the "benchmark" for attorneys' fees awarded under the percentage method. *Staton v. Boeing* (9th Cir. 2003), 327 F.3d 938, 968; *Vizcaino*, 290 F.3d at 1048. However, importantly, district courts may adjust the twenty-five percent (25%) benchmark upward if "the percentage recovery would be [] too small [] in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers,* 904 F.2d, *supra*, at 1311.

In California, attorneys' fees tend to be awarded above the twenty-five percent (25%) federal benchmark. *See Van Vranken v. Atl. Richfield Co.* (N.D. Cal. 1995) 901 F.Supp.294 at 297 (holding that fee awards of 30-50% are more typical where total recovery is less than $10 million); *Craft v. Cnty. of San Bernardino* (C.D. Cal. 2008) 624 F.Supp.2d 1123, 1127 (holding that fee awards in cases where the settlement amount is below $10 million are often more than the 25% benchmark).

Moreover, "awards in the Central District are in the 20% to 50% range." *Clayton v. Knight Transp.* (E.D. Cal. Oct. 30, 2013) 2013 WL 5877213, at *23. Cases in other districts usually award attorneys' fees in the 30-40% range in wage-and-hour class actions that result in a recovery of less than $10 million. *See Singer v. Becton Dickinson and Co.* (S.D. Cal. June 1, 2010) 2010 WL 2196104, *8 (approving attorneys' fees of one-third of the settlement amount and holding that the award was similar to awards in other wage-and-hour class actions where fees ranged from 30.3-40%); *Romero v. Producers Dairy Foods, Inc.* (E.D. Cal. Nov. 14, 2007) 2007 WL 3492841 (recognizing that "fee awards in class actions average around one-third" of the settlement). Thus, the requested fee request is reasonable.

/ / /

/ / /

/ / /

### a)    Applicable Law Regarding Attorneys' Fees

District courts may award attorneys' fees and costs to a prevailing plaintiff where "(1) fee shifting is expressly authorized by the governing statutes; (2) the [defendant] acted in bad faith or willfully violated a court order; or (3) the successful litigants have created a common fund for recovery or extended substantial benefit to the class." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011.) In the class action context, courts generally award attorneys' fees and costs pursuant to the common fund or statutory fee-shifting methodologies. *In re Bluetooth,* 654 F.3d at 941.

Where there is a common fund, "the primary basis of the fee award remains the percentage method." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Bluetooth*, 654 F.3d at 942. The Ninth Circuit has consistently awarded attorneys' fees under the common fund method, because "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Staton v. Boeing Co.,* 327 F.3d 938, 967 (9th Cir. 2003.) "The common fund doctrine is properly applied, however, only if (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These requirements are met where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lumpsum [settlement] recovered on his behalf." *Id*.

/ / /

/ / /

/ / /

The proposed settlement herein creates a common fund of $636,570. Each Settlement Class Member who cashes the check mailed to them will receive a share of the settlement fund. Any money left over will go to the *cy pres* recipient LAAW. No money will revert to Defendant. Thus, the common fund doctrine enables the Court to determine a reasonable fee with "some exactitude." *Paul*, 886 F.2d at 271 (internal citation omitted).

While not required, courts may "cross-check" the percentage of the common fund against the lodestar to ensure reasonableness of the fee award. *Vizcaino,* 290 F.3d at 1050 ("The district court applied the lodestar method as a cross-check of the percentage method. Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The lodestar figure is determined by multiplying the number of hours reasonably expended on the litigation by hourly rates. *In re Bluetooth*, 654 F.3d at 941. The lodestar figure is only the starting point for determining an appropriate fee. *Id*.; *Staton*, 327 F.3d at 965; *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992). A court may reduce or enhance the lodestar figure based on several "reasonableness" factors, including the following: (1) the quality of the representation; (2) the benefit obtained for the class; (3) the complexity and novelty of the issues presented; and (4) the risk of non-payment. *In re Bluetooth,* 654 F.3d at 942. As set forth below, all of these factors favor approval.

### b) Class Counsel Provided High Quality Representation that Supports the Requested Fee Award

Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters, including experience in Fair Credit Reporting Act cases involving allegations that the defendant employer failed to provide a legally compliant stand-alone disclosure. (See Han Decl. ¶¶ 12-14; 17-18.) This substantial experience allowed Class Counsel to provide high quality representation of Plaintiff and the settlement class.

**c)** **The Settlement Provides Benefit to the Class and Supports the Requested Fee Award**

Class members will receive a direct financial benefit from this settlement. The average net estimated Individual Settlement Payment is $61.83 per class member. (Keough Decl. ¶ 20). Class members will not have to submit a claim form but will be mailed checks directly. The results achieved compare favorably to other recent FCRA cases. *See Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval) involved a claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement or a gross recovery of $3.30 per class member. Similarly, *In re Uber FCRA Litigation*, 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval) involved a claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement or a gross recovery of $7.31 per class member.

**d)** **The Complexity of the Issues Supports the Fee Award**

The risks of the litigation, including the high uncertainty regarding the law concerning the FCRA, the risk that the forms would be found to be compliant and the risk that if Defendant's conduct was found not to be willful class members would recover nothing, support the fee award. As discussed in further detail above, the uncertain legal landscape of the FCRA creates a substantial risk of proceeding to certification and beyond. Although Plaintiff believes that he would have prevailed had litigation continued through class certification and ultimately trial, considerable risks, delays and uncertainties nevertheless exist with continued litigation. The parties have achieved a fair Settlement that reflects a meaningful recovery on behalf of Class Members and that merits the Court's final approval.

/ / /

/ / /

/ / /

**e)** **The Risk of Nonpayment Supports the Requested Fee Award**

At this juncture, the Settlement would entitle each Settlement Class Member to a significant recovery. In contrast, if the case would continue in litigation, even if Plaintiff prevailed on a class certification motion, any appeal by Defendant would prolong the litigation and delay remedies to the Class. In fact, courts have found such risks to support an upward adjustment of the 25% benchmark. *See Deaver v. Compass Bank*, No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) (awarding 33% of common fund and concluding that "[g]iven the significant challenges Plaintiff would have faced in maintaining this litigation through class certification and trial, the results achieved in this case are very favorable."); *Boyd v. Bank of Am. Corp.,* No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one third of common fund based on significant risk of continued litigation where settlement provided only 36% of potential damages.)

**f)** **The Contingent Nature of the Settlement Supports the Fee Award**

The contingent nature of the litigation supports the requested fee. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d at 1299. By undertaking a class action on a contingency fee basis, counsel not only must turn away other income generating opportunities but must take on the risk of never receiving compensation at all. *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017). A contingent fee must be higher than a fee for the same legal services paid as they are performed because it "compensates the lawyer not only for the legal services he renders but for the loan of those services." Id. (quoting *Graham v. Daimler Chrysler Corp.,* 34 Cal. 4th 553, 580 (2004)). Here, Class Counsel represented Plaintiff and

the Class on a contingency fee basis, with no guarantee of payment. (Han Decl. ¶ 21).

### g) The Reaction of the Class Supports the Fee Award

The reaction of the Class supports the requested fee. To dates there are no objections and only forty-five valid requests for exclusion. This means only .035 percent of the class members chose to request exclusion. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 ("absence of objections from the class is also a factor in determining the proper fee award").

### h) A Lodestar Analysis Also Supports The Requested Fee

Class Counsel devoted substantial hours to this matter over the course of the litigation. The Task & Time Chart, attached as **"EXHIBIT 1"** to the Declaration of Douglas Han, sets forth these hours in detail, allocating the total time to the tasks that were required to bring this matter to its successful conclusion. The charts were prepared so that the Court could peruse the same without having to set forth each and every task in the body of the motion. The charts are thorough, comprehensive, and demonstrate the effort to efficiently manage this matter. The Court is respectfully referred to the chart, which specifically sets forth the history of the work rendered in this case by Class Counsel. The work commenced with the pre-filing case analysis and research and continues literally up to the moment of settlement and final approval motion work and hearing.

Class Counsel's lodestar as of September 18, 2020 is $272,505. (Han Decl. ¶ 16). The hours and hourly rates of the timekeepers on this case are as follows:

| Attorney | Bar Date | Hourly Rate | Hours | Lodestar |
|---|---|---|---|---|
| Douglas Han | 2004 | $650.00 | 150.6 | $97,890.00 |
| Shunt Tatavos-Gharajeh | 2010 | $525.00 | 151.2 | $79,380.00 |
| Daniel J. Park | 2010 | $525.00 | 181.4 | $95,235.00 |
| | | **Total:** | 483.2 | **$272,505.00** |

Additional details about the qualifications of these attorneys are set forth in Declaration of Douglas Han. (See Han Decl. ¶¶ 12-14; 17-18).

The above rates are within the range of rates approved by courts for complex class actions, including wage-and-hour actions. See, e.g., *Wang v. Chinese Daily News, Inc.,* 2008 U.S. Dist. LEXIS 123824 at 8–9 (C.D. Cal. filed Oct. 3, 2008) (in a wage-and-hour action, approving 2008 rates of up to $800 per hour), vacated on other grounds, 132 S. Ct. 74 (2011); *Rutti,* 2012 WL 3151077 at 11 (in a wage-and-hour action, approving 2012 rates of up to $750 per hour); *Pierce v. County of Orange,* 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) (approving 2012 rates of up to $850 per hour); *In re HP Laser Printer Litig.*, 2011 WL 3861703 at 5–6 (C.D. Cal. filed Aug. 31, 2011) (approving rates of up to $800 per hour); *Perfect 10 v. Giganews Inc.*, 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. 2015) (approving 2015 rates of $750 for an 18 year attorney, $640 for a 12 year attorney, and $640 for a 7 year attorney, and $505 for a 3 year attorney); *Stuart v. RadioShack Corp.,* No. C-07-4499, 2010 U.S. Dist. LEXIS 92067, at *16 (N.D. Cal. Aug. 9, 2010) (finding rates ranging between $600 and $1,000 reasonable); *In re Apple Inc. Secs. Litig.,* No. 5:06-CV-05208, 2011 U.S. Dist. LEXIS 52685, at *16 (N.D. Cal. May 17, 2011) (approving hourly rate of $836); In re TFT-LCD (Flat Panel) *Antitrust Litig.*, 2013 WL 1365900, at *9 (approving hourly rates up to $1000); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.,* No. C 10-02124 SI, 2014 WL 186375, at *2 (N.D. Cal. Jan. 16, 2014) (approving hourly rates up to $850); *Kearney v. American Honda Motor Am.* 2013 U.S. Dist. LEXIS 91636 *24 (approving hourly rates of $650-$800 for senior attorneys in consumer class action); *Holloway v. Best Buy Co.,* C-05-5056-PJH (MEJ) (N.D. Cal.) (approving 2011 partner rates of $825 to $700 an hour). The requested $210,068.10 fee actually results in a negative multiplier.

/ / /

/ / /

### 2. Plaintiff's Litigation Expenses Should be Reimbursed

The Agreement provides for reasonable out-of-pocket costs incurred in this action. (Settlement ¶ 5.4.1.) Prevailing parties may recover as part of statutory attorney fees "litigation expenses when it is the prevailing practice in the given community for lawyers to bill those costs separately from their hourly rates." *Trs. Of the Constr. Indus and Laborers Health and Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253, 1258 (9th Cir. 2006.) In California, attorneys are reimbursed for out of pocket expenses such as "1) meals, hotels, and transportation; 2) photocopies; 3) postage; 4) filing fees; 5) messenger and overnight delivery; and 6) online legal research*." Johnson v. General Mills, Inc.,* 2013 WL 3213832 *6 (C.D. Cal. 2013.) Here, Plaintiff has incurred $10,974.14 in litigation expenses including mediator fees, travel, postage, Lexis legal research, PACER, and court filing fees. (Han Decl. ¶ 22; Exhibit 2.) Plaintiff seeks an award of $10,974.14.

### 3. The Settlement Administrator's Expenses Should Be Approved

The charges for the Settlement Administrator JND are currently estimated to be $35,000. (Keough Decl. ¶ 22). JND's costs are reasonable and should be approved. (Han Decl. ¶ 23).

### 4. The Court Should Approve A Class Representative Incentive Payment

Plaintiff requests a Class Representative Incentive Payment of $10,000. Plaintiff has assisted with the prosecution of the case including providing counsel information about Defendant's policies and practices, assisting counsel in preparing for mediation, being available for mediation, and reviewing settlement and other case documents. (Declaration of Harry Noriesta ¶ 7.) He undertook to prosecute the case despite the risk of a cost judgment against him, and despite the potential risk that prospective employers would hold it against him. (Noriesta Decl. ¶¶ 8-9.) In addition to the Release Claims released by all Settlement Class Members, Plaintiff

has agreed to a wide general release. (Agreement 5.3.) The requested Class Representative Incentive Payment is reasonable and should be approved.

## IV. CONCLUSION

The parties have negotiated a fair and reasonable settlement. Accordingly, Plaintiff moves the Court to grant final approval, award the requested attorney fees and litigation expenses, settlement administrator expenses and Class Representative Incentive Payment.

DATED: September 21, 2020        **JUSTICE LAW CORPORATION**

By: /s/ Douglas Han
         Douglas Han
         *Attorneys for* Plaintiff