UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 19-620 JGB (KKx)** | Date | October 22, 2020 |
|---|---|---|---|
| Title | *Harry Noriesta v. Konica Minolta Business Solutions U.S.A., Inc.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement, and for Award of Attorney Fees and Expenses, Settlement Administrator Payment, and Class Representative Incentive Payment (Dkt. No. 47) (IN CHAMBERS)

Before the Court is Plaintiff's unopposed motion for final approval of class action settlement, and for award of attorney fees and expenses, settlement administrator payment, and class representative incentive payment. ("Motion," Dkt. No. 47.) The Court held a final approval hearing on October 19, 2020. After considering the papers filed in support of the matter, as well as oral argument, the Court GRANTS the Motion.

## I. BACKGROUND

On April 5, 2019, Plaintiff Harry Noriesta filed this action on behalf of himself and the putative classes of similarly situated individuals. ("Complaint," Dkt. No. 1.) The Court granted in part and denied in part Defendant's motion to dismiss on July 8, 2019, ("MTD Order," Dkt. No. 27), and Plaintiff filed an amended complaint on August 5, 2019. ("FAC," Dkt. No. 32.) The FAC alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)(A), ("FCRA"); the California Investigative Consumer Reporting Agencies Act, California Civil Code § 1786 et seq., ("ICRAA"); and the California Consumer Credit Reporting Agencies Act, California Civil Code § 1785 et seq., ("CCRAA"). (Id.) Plaintiff alleges that before conducting a background check on applicants, Defendant failed to provide applicants with a stand-alone document that consists solely of the background check disclosure, as required by law. (Id.)

Plaintiff filed an unopposed motion for preliminary approval of class action settlement on March 30, 2020. ("MPA," Dkt. No. 38.) The Court granted the MPA on May 7, 2020. ("MPA Order," Dkt. No. 43.) In the MPA Order, the Court also certified three Rule 23(b)(3) classes for purposes of settlement. (Id. at 3-6.) The Court appointed Douglas Han of Justice Law Corporation as Class Counsel, appointed Harry Noriesta as class representative, appointed JND Legal Administrator as the settlement administrator, approved the requisite notice and exclusion forms, and authorized the mailing of class notice. (Id. at 13.) The Court set the final fairness hearing for Monday, October 19, 2020 at 9:00 a.m. (Id.)

Plaintiff filed the Motion on September 21, 2020, and included in support the following documents:

A. The Declaration of Douglas Han, ("Han Declaration," Dkt. No. 47-1);
B. The Declaration of Harry Noriesta, ("Noriesta Declaration," Dkt. No. 47-2); and
C. The Declaration of Jennifer M. Keough, ("Keough Declaration," Dkt. No. 47-3).

Defendant filed a notice of non-opposition to the Motion on September 28, 2020. ("Non-Opposition," Dkt. No. 48.) On October 13, 2020, Plaintiff filed a Supplemental Declaration of Jennifer M. Keough regarding notice administration. ("Keough Supplemental Declaration," Dkt. No. 49.)

## II. THE SETTLEMENT AGREEMENT

The parties finalized and executed the class action settlement agreement on March 30, 2020. ("Agreement," Dkt. No. 38-1.) The Settlement involves three classes:

"FRCA Class": All United States unique job applicants on whom Defendant procured a consumer report for employment purposes based upon the same disclosure form provided to Plaintiff. Class membership begins on April 5, 2014 and continues through July 1, 2018. Defendant estimates that the FCRA Class has 5,748 members. (Agreement § 1.6.1.)

"ICRAA Class": All unique job applicants on whom Defendant procured a consumer report for employment purposes based upon the same disclosure form provided to Plaintiff and who provided a California address as their address of residence. Class membership begins on April 5, 2014 and continues through July 1, 2018. Defendant estimates that the ICRAA Class has 682 members. (Agreement § 1.6.2.)

"CCRAA Class": All unique job applicants on whom Defendant procured a consumer report for employment purposes containing consumer credit information based upon the same disclosure form provided to Plaintiff and who provided a California address as their address of residence. Class membership begins on April 5, 2012 and continues through July 1, 2018. Defendant estimates that the CCRAA class has 643 members. (Agreement § 1.6.3.)

### A. Financial Terms

The financial terms of the Agreement are as follows:

- Gross settlement amount:                $636,570.00
- Attorneys' fees:                        $210,068.10
- Out of pocket costs:                    $10,974.14
- Service award to class representative:  $10,000.00
- Payment to settlement administrator:    $35,000.00
- Net settlement amount:                  $370,527.76

The $636,570.00 gross settlement amount is non-reversionary, so no amount will be returned to Defendant. (Mot. at 9.) If a check remains uncashed 180 days after the final distribution, the settlement administrator will direct funds from the uncashed check to a mutually agreed upon cy pres beneficiary. (Id.; Agreement, § 5.5.1.) The cy pres beneficiary will be Legal Aid At Work ("LAAW"), a 501c(3) non-profit organization. (Mot. at 9.)

### B. Settlement Class Members

All Settlement Class Members who do not submit a valid and timely Request for Exclusion will receive a settlement cash payment. (Agreement § 5.5.) Each Class Member will be eligible to receive an equal pro rata portion of the net settlement amount for each Class in which each Class Member qualifies for membership. (Id.) Given that all Class Members would have, in theory, suffered the same alleged "injury" if Plaintiff prevailed on a class-wide basis, but some may have different recourses under the ICRAA and CCRAA claims, the net settlement amount will be divided equally among all Class Members within each Class, with the Class Members eligible to recover a pro rata share for each Class in which they are a member. (Id.)

### C. Class Representatives

The Agreement provides for an incentive payment of $10,000 to Plaintiff for his participation and risks undertaken in this action, and for a general release of claims. (Agreement § 5.3.)

### D. Settlement Administration Costs

The settlement administration, JND Legal Administration, will be paid from the gross settlement amount for the cost of administering the Agreement. (Agreement § 3.1.) The Keough Declaration states that the costs for administering the Agreement, including the anticipated costs for completion of the settlement administration, are $35,000. (Keough Decl. ¶¶ 21-22.)

### E. Attorneys' Fees and Costs

Under the terms of the Agreement, Class Counsel will seek an award of attorneys' fees not to exceed 33% of the gross settlement amount, or $210,068.10, and reasonable out-of-pocket costs incurred in this action, up to $15,000. (Agreement § 5.2.) The Notice reflected Class Counsel would seek up to $210,068.10 in fees and up to $15,000 in costs. In the Motion, Class Counsel request $210,068.10 in fees, (Mot. at 22), and request reasonable out-of-pocket costs in the amount of $10,974.14, (Mot. at 30).

**F.  Injunctive Relief**

The Agreement does not appear to include any injunctive relief.

**G.  Release**

All Settlement Class members who do not request exclusion agree to release Defendant from:

> all claims, damages, losses, demands, penalties, liabilities, fees, interest, causes of action, complaints or suits that were or could have been brought in the Action relating to background checks including but not limited to claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq., the Investigative Consumer Reporting Agencies Act, Cal. Civ. Code § 1786 et seq., the Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785 et seq., California Business & Professions Code §§ 17200 et seq., and similar claims under state law which any Class Member has ever had, or hereafter may claim to have against the Released Parties as of the Effective Date. As to all other FCRA claims, past or present, the class members also waive and release their rights to be a class representative in a class action, or to seek punitive damages from KMBS, as of the Effective Date of the settlement.

(Agreement § 1.33.) Plaintiff Noriesta will also execute a general release of known and unknown claims he may have against Defendant in consideration for his receipt of the incentive award payment contemplated by the Agreement. (Mot. at 10.)

**H.  Notice**

To date, there have been 45 valid opt-outs and no objections. (Keough Suppl. Decl. ¶¶ 15, 17.) The parties have completed the Agreement's procedures for notifying class members of the settlement. (See Agreement §§ 3.2, 3.4, 4.1, 4.2; see generally Keough Decl.)

On June 4, 2020, Defendant provided to the settlement administrator a Class List with class information including: (1) the name of each Class Member; and (2) the most current known address of each Class Member, as reflected in Defendant's records at the time of entry of the Court's Preliminary Approval Order. (Agreement § 3.2; Keough Decl. ¶ 5.) On June 26, 2020,

the administrator sent the Class Notice and Request for Exclusion (attached as Exhibits A and B to Agreement) to Class Members via First Class U.S. Mail, using the most current known address of each Class Member, as reflected in Defendant's records at the time of entry of the Court's Preliminary Approval Order. (Agreement § 3.4; Keough Decl. ¶ 7.)

The administrator re-sent all Class Notices returned with a forwarding address. (Agreement § 3.4.1; Keough Decl. ¶ 8.) For those Class Notices returned without a forwarding address, the administrator conducted advanced address research to locate a better address, and re-sent Notices to the updated addresses. (Id.) A total of 5,954 Class Members, or 98.6% of the Class, were mailed Notice which was not returned as undeliverable. (Keough Decl. ¶ 9.) Class Members had until August 25, 2020 to opt-out of the Agreement. (Agreement § 4.2.)

On April 9, 2020, the administrator mailed notice of the proposed settlement and other materials required by the Class Action Fairness Act ("CAFA") to the appropriate federal and state officials. (Keough Decl. ¶ 3.)

## I. Administration

JND Legal Administration will serve as the settlement administrator. (Agreement § 3.1; MPA Order.) The settlement administrator will issue individual settlement checks no later than thirty days after the effective date. (Id. § 5.7.)

## III. LEGAL STANDARD

### A. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. Id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. Hanlon, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." Id.

In order to approve a class action settlement, the court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). Id.

### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure. While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Commc'ns, Inc. v. AT&T Co., 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Newberg on Class Actions § 14.1 (4th ed. 2005) ("Two significant exceptions [to the 'American Rule'] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

### IV. DISCUSSION

### A. Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b).

The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

The settlement administrator filed a declaration asserting they served all required documents to all appropriate federal and state officials on July 3, 2019. (Keough Decl. ¶ 3, Ex. A.) As a result, the Court finds that the CAFA notice requirements have been satisfied.

### B. Rule 23(a) and (b) Requirements

In its MPA Order, the Court certified the Settlement Classes in this matter under Rules 23(a) and 23(b)(3). (MPA Order at 3-6, 13.) The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); see also Harris v. Vector Marketing, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Classes have not changed since they were conditionally certified. All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Classes.

### C. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its MPA Order, the Court approved the notice sent to Settlement Class Members. (MPA Order at 13.) JND Legal Administration completed notice in accordance with the procedures approved by the Court. (See Keough Decl.) The Court therefore finds that notice to the Settlement Class was adequate.

### D. Fair, Reasonable, and Adequate

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on October 19, 2020.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the risk of maintaining class action status throughout the trial;
(4) the amount offered in settlement;
(5) the extent of discovery completed, and the stage of the proceedings;
(6) the experience and views of counsel;
(7) the presence of a governmental participant; and
(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exhaustive, and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of Plaintiff's Case

The initial fairness factor addresses Plaintiff's likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964-65 (9th Cir. 2009). In determining the probability of Plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965. In the MPA and Motion, Plaintiff emphasized the hurdles the class would need to overcome to prevail on the merits of their case. (MPA at 15; Mot. at 13-16.) As a result, the Court finds this factor weighs in favor of granting final approval.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

The risk, expense, and complexity, including the risk of decertification, weigh in favor of final approval. (MPA Order at 10; Mot. at 16.) Without the Agreement, the parties would be required to litigate the merits of the case—a process which the Court acknowledges is long, complex, and expensive. Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of approval.

### 3. Amount Offered in Settlement

The gross settlement amount is $636,570, with an average recovery of $61.83 per class member. (Agreement § 5.1; Mot. at 1; Keough Decl. ¶ 20.) Plaintiff asserts that "the FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages, whichever is

greater." (Mot. at 1, 18.) Here, there are an estimated 5,992 class members, with 7,016 potential violations.[1] (Keough Decl. ¶ 20.) Thus, Defendant's maximum liability would be almost seven million dollars, or $1,000 per violation. The $636,570 gross settlement amount is approximately 9% of Plaintiff's maximum potential recovery for the FCRA claims. With a net settlement amount of $370,527.76, an average of $52.81 will be available per violation, or $ 61.83 per class member.

"Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." Millan v. Cascade Water Servs., 310 F.R.D. 593, 611 (E.D. Cal. 2015). Here, the recovery amount is consistent with amounts routinely found to be fair and reasonable. See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (permitting settlement amount that was one-sixth of potential recovery); Deaver v. Compass Bank, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving a settlement that was 10.7% of the total potential liability). In light of the difficulties Plaintiff would likely face if he continued to litigate this case, the Court finds the amount offered here to be reasonable.

4. **Extent of Discovery Completed, and the Stage of the Proceedings**

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239. "The parties must … have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (internal quotation marks omitted). Here, Class Counsel represent that they engaged in significant investigation and discovery, including reviewing documents and communication with other class members and obtaining their documents for analysis. (Mot. at 20; Han Decl. ¶ 15.) The Parties attended a mediation on January 20, 2020, with a well-regarded class action mediator. (Han Decl. ¶ 7.) Under the auspices of the mediator, the parties reached settlement after a full day of negotiations. (Id.) Because Plaintiff participated in mediation and significant investigation, the Court finds each side has a clear idea of the strengths and weaknesses of its respective cases, and concludes that the extent of discovery and the stage of proceedings weigh in favor of final approval.

5. **Experience and Views of Counsel**

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects

---

[1] The estimate of the number of class members and violations differs between the Motion and the Keough Declaration. The Court adopts the figures in the Keough Declaration.

each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995). Here, Class Counsel have extensive experience serving as counsel in consumer class actions. (Han Decl. ¶¶ 12-18.) Likewise, Defendant's Counsel is a nationally recognized law firm. (Mot. at 21.) The parties reached settlement after review of their claims and defenses, with the assistance of a mediator, and Class Counsel recommend approval of the Agreement. (Mot. at 21.) As a result, the experience and views of Class Counsel also weigh in favor of final approval.

### 6. Presence of a Government Participant

No governmental entity is present in this litigation. Therefore, this factor favors approval.

### 7. Any Opposition by Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Here, JND Legal Administrator has received no objections and only 45 valid opt-outs. (Keough Suppl. Decl. ¶¶ 15, 17.) JND mailed notice to all 6,037 individuals on the class list, of which 37 had addresses ultimately deemed undeliverable despite advanced address research efforts. (Id. ¶¶ 7-8.) A total of 5,954 Class Members, or 98.6% of the Class, were mailed Notice which was not returned as undeliverable. (Id. ¶ 9.) The deadline to opt out or object to approval of the Agreement was August 25, 2020, and only 0.74 percent of class members requested exclusion. (Id. ¶¶ 15, 17.) The Court finds that this factor weighs in favor of approval.

On balance, the factors support final approval of the Agreement. The Agreement is fair, adequate, and reasonable.

### E. Attorneys' Fees and Costs

#### 1. Attorneys' Fees

Class Counsel request approval of $210,068.10 in attorneys' fees, which is equal to one-third of the Gross Settlement Amount. (Mot. at 22.) Courts are obligated to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable

Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).  The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  McGrath v. Cty. of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).  The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  Next, the Court must decide whether to adjust the "presumptively reasonable" lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028-29 (9th Cir. 2000).  Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations.  Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

The Court begins with the lodestar method as a means of cross-checking the one-third of the gross settlement amount requested.  Class Counsel calculate the following subtotals:

| Attorney | Hours | Hourly Rate | Lodestar |
| --- | --- | --- | --- |
| Douglas Han | 150.6 | $650.00 | $97,890.00 |
| Shunt Tatavos-Gharajeh | 151.2 | $525.00 | $79,380.00 |
| Daniel J. Park | 181.4 | $525.00 | $95,235.00 |
| Total | 483.2 |  | $272,505.00 |

(Mot. at 28-29; Han Decl. ¶ 16.)  Plaintiff argues that the hourly rates are within the range of rates approved by courts for complex class actions.  (Mot. at 29 (listing cases).)  Here, Class Counsel request $210,068.10 in fees, which amounts to one third (33%) of the $636,570 gross settlement amount.  (Mot. at 22.)   Thus, Class Counsel request less than their lodestar, as of the filing of the Motion.  Counsel also provide support for the appropriateness of the requested amount, (id. at 22-29; Han Decl. Ex. A), including citing numerous California cases awarding fees of one third or more of the common fund, (Mot. at 23).  Because Class Counsel request an amount less than their lodestar figure, the Court finds $210,068.10 in attorneys' fees to be reasonable.

   2.  Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985).  "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."  Rutti v. Lojack Corp., Inc., 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class Counsel seek $10,971.14 in costs, which is less than the $15,000 maximum allocation in the Agreement.  (Mot. at 30; Agreement § 5.2.)  Counsel provide a breakdown of

the expenses incurred in the case for filing fees, mediation, attorney service charges, legal research, and mailing charges. (Han Decl., Ex. B.) All of these expenses are typically recoverable in litigation. Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement). The Court therefore approves the requested amount of costs.

### 3. Incentive Award

Plaintiff requests a service award of $10,000 for named Plaintiff Noriesta. The trial court has discretion to award incentives to class representatives. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz v. Weyerhaeuser Co., 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009). The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, named Plaintiff has agreed to a wide general release (Agreement § 5.3), unlike other class members who only release the settled claims alleged in the complaint. Noriesta also assumed significant risk in bringing this litigation, including the risk of a cost judgment against him, and the risk that prospective employers would hold his participation in the litigation against him. (Mot. at 30; Noriesta Decl. ¶¶ 8-9.) Noriesta assisted in the prosecution of the case by providing information about Defendant's policies and practices, assisting counsel in preparing for mediation, being available throughout mediation, and reviewing settlement documents, among other contributions. (Mot. at 30; Noriesta Decl. ¶ 7.) Noriesta estimates he spent close to forty hours working on the case. (Noriesta Decl. ¶ 7.) Based on the above, the Court finds that the requested incentive award is appropriate.

### V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion. The Court:

(1) GRANTS final settlement approval;
(2) GRANTS the request for attorneys' fees and AWARDS Class Counsel attorneys' fees in the amount of $210,068.10 from the gross settlement amount;
(3) GRANTS the request for costs and AWARDS Class Counsel costs in the amount of $10,971.14 from the gross settlement amount;
(4) GRANTS the request for payment to the settlement administrator and AWARDS JND Legal Administration fees in the amount of $35,000 from the gross settlement amount;

//
//

(5) GRANTS the request for an incentive award and AWARDS $10,000 to Noriesta;
(6) DISMISSES the First Amended Complaint WITH PREJUDICE.

**IT IS SO ORDERED.**